### SHANNON CO v WURLITZER et, (2 cases) WURLITZER v SHANNON CO

Ohio Appeals, 1st Dist, Hamilton Co

Nos 4046, 4047, 4056
Decided Oct 24, 1932

HAMILTON, J.

Cramer & Gordon, Cincinnati, for plaintiff in error.

Harmon, Colston, Goldsmith & Hoadley, Cincinnati, and J. L. Kohl, Cincinnati, for Rudolph H. Wurlitzer.

Messrs. Goebel, Dock & Goebel, Kuertz & Zielonka, Charles T. Tatgenhorst, Jr., John H. Kilduff, Edwin Becker, Arthur Fix, G. Karpe, Clarence M. Smith, Grischy & Grischy, Joseph H. Roehrer, Louis J. Hoppe, Arthur Wolfe, Bolsinger & Black, John D. Ellis, City Solicitor, Charles Dornette, Julius R. Samuels, W. B. Mente, Murphy & Murphy, Nichols, Morrill, Wood, Mark & Ginter, Kilgariff & Kilgariff, E. H. Brink, Beebe & Borsch, David N. Rosenbaum, and Paxton, Warrington & Seasongood, all of Cincinnati.

The first question for consideration is whether or not Wurlitzer occupied the position with reference to the property and the construction of the houses as to make his interest in the property subject to the liens by virtue of §8310, GC.

Wurlitzer's claim is that he made a conditional sales option with Blickensderfer's concern, under which he was endeavoring to sell the real estate; that in the construction of the houses, he was not the owner, part owner, nor had he any contractual relation for the construction of the houses with Blickensderfer or his company; that Blickensderfer's company having fallen down on its option of purchase, that any improvements on the land, of which he had the legal title, reverted to him, subject only to the right of the parties interested to comply with Blickenderfer's obligation.

There is a great deal of oral evidence in the case.

Wurlitzer's position is disclosed by two contracts, which are in writing, and are introduced in evidence.

The first contract was entered into on the 25th day of October, 1926 between Wurlitzer and Blickensderfer and Ogden, a partnership doing business as the B. & O. Company, of Cincinnati, Ohio. In this contract Wurlitzer recites that he is the owner of certain real estate, located at the northeast corner of Madison Road and Bedford Avenue, City of Cincinnati, fronting about 168 feet on Madison Road and running back 260 feet on Bedford Avenue.

The contract recites that Wurlitzer is desirous of disposing of the real estate for the sum of $22,000 on certain terms and conditions as to interest and payments. The contract provided that the real estate should be divided into three lots, known as lots 1, 2, and 3; that the B & O Company is to build on said lots three houses according to plans and specifications which are to be submitted to Rudolph H. Wurlitzer; upon his approval of the plans and specifi-

cations, Wurlitzer agrees to finance the cost of construction of such houses according to plans and specifications in a sum not to exceed fifteen thousand dollars for each house, or forty-five thousand dollars on all three houses.

The B & O Company agrees to pay the brokerage charges on said loans, which shall be 5% and in addition thereto will pay interest at the rate of 7% per annum on the moneys so advanced, said interest to be deducted from said construction loan in the final accounting.

Upon completion of said houses the B & O Company shall have a right to place a mortgage on each house, said mortgage on each house is not to exceed the sum of twenty thousand dollars, or a total of Sixty Thousand Dollars on the three houses. These mortgages were to run for a certain period of years at a certain rate of interest.

The contract further provided that in order to enable the B & O Company to procure such mortgage loan, Wurlitzer should convey the property to the B & O Company by general warranty deed, title to be marketable. Upon such conveyance of the property to the B & O Company and the concurrent execution of such mortgage, the B & O Company shall execute and deliver to Wurlitzer a second mortgage, in payment of the lots, and to pay Wurlitzer any and all moneys advanced to the B & O Company as a "construction loan."

The B & O Company were not to build more than one house on any one lot. Plans and specifications for such houses were attached to the contract and made part of it. Wurlitzer to advance money on the construction money loans upon warrants signed by H. F. Beinfang, and attached to said warrants shall be affidavits from contractors, sub-contractors, material companies, and, or materialmen furnishing material for said buildings, and the B & O Company in compliance with the Mechanic's Lien Laws of the State of Ohio.

The contract also provided that Wurlitzer would convey the lots to such assigns as the B & O Company would designate, such assigns to procure and make the mortgage loans and to make the second mortgages to Wurlitzer.

Blickensderfer and Ogden, doing business as The B & O Company proceeded to erect the houses, Wurlitzer advancing money from time to time. Ogden was retired as a partner and Blickensderfer entered into some kind of an arrangement with one McFarland, who undertook to place the loan, and it was testified to that Blickensderfer

assigned his contract to McFarland, but McFarland failed to procure any loan, and Blickensderfer proceeded. Just how McFarland dropped from the proposition is not clear, neither is it shown that Wurlitzer knew anything about McFarland.

Blickensderfer completed the houses, was unable to pay bills for labor and material, neither was he able to procure a loan to take over the property from Wurlitzer.

Following this situation, on the 27th day of May, 1927, Wurlitzer entered into a new contract with Blickensderfer, the first part of which was in substance as provided in the contract of October 25th, 1926. The contract of May 27th, 1927, then provides:

Whereas, the contractor has found that the actual cost of constructing the buildings referred to in the contract of October 25, 1926, has exceeded the estimated cost thereof; and,

Whereas, the said contractor has been required to call upon the said Wurlitzer to advance, and the said Wurlitzer has been compelled to advance to the contractor a total sum of money in excess of that called for by the said agreement of October 25, 1926; and,

Whereas, the said Wurlitzer has been called upon so to advance and up, to the date hereof has so advanced a total sum of $61,481.80.

The contract then recites that certain mechanic's liens have been taken on the property in the aggregate sum of $9655.00, and the contractor has requested Wurlitzer to pay and discharge said liens, and in addition thereto to advance an additional sum of $3863.20, to enable the contractor to complete the buildings, and to that end Wurlitzer shall so advance and shall so have advanced to the contractor the sum of $75,000.00 in the aggregate.

The contract recites said contractor is unable to consummate sales of the buildings and lots as contemplated in the contract of October 25th, 1926.

The contract then states that Wurlitzer agrees with Blickensderfer to discharge these liens and pay the additional sum, and that the contractor Blickensderfer shall be allowed until July 1, 1928 to negotiate the sale of the three buildings with the respective lots on terms and conditions set out in the agreement of October 25th, 1926; that the net price sufficient to repay Wurlitzer was the sum of $75,000, plus the sale price of $22,000 for the lots, and provided other terms for the sale of the properties.

The contract then provided that upon the failure of the contractor to make sales

on or before July 28th, the buildings erected on the property of Wurlitzer shall thenceforth belong to said Wurlitzer, free and clear of any and all claims, or demands; and Blickensderfer, if necessary to clear the title, is to execute all necessary releases.

The lienholders claim these contracts create a liability on the part of Wurlitzer. Their claim is further supported by oral evidence to the effect that Wurlitzer desired to control the property and buildings which lay immediately across Bedford Avenue from his residence property; that he visited the properties at different times when under the process of construction and it is claimed did other minor acts which tended to show he was the real party in interest in the construction of the houses and the development of the property.

Something is said in the brief of· counsel for Wurlitzer to the effect that his loans to Blickenderfer were construction loans. However, Wurlitzer did not follow the provisions of §8321-1 GC, under which he might have obtained priority for construction money furnished, if he were not the real owner and Blickensderfer his agent in developing the property. That question need be given no further consideration.

The trend of authority leads us to the conclusion that Wurlitzer was the owner within the meaning of §8310 GC.

In the case of Veale Lumber Co. v Brown, 195 NW, 248, the owner of certain unimproved residence lots entered into a contract with a carpenter and builder by the terms of which a conveyance of the property was to be made to the builder in the future. By the terms of the agreement the owner of the property was to advance to the builder money to be used in the erection of the houses. The court held:

"Owner of lots, who entered into an oral agreement with a contractor contemplating the improvement of the property and advances by the owner, and sale to the contractor when improvement was completed was in effect a principal and the contractor, his agent, and his rights were subordinate to those of holders of mechanic's liens under §3096 GC."

To the same effect was the holding in Arnstein Realty Co. v Williams, 40 SW 2nd, 1007; Bohn Mfg. Co. v Kountze, Neb. Sup. Court, 12 L.R.A., 33; and Miller v Schmidt, 67 N. Y. S., 1077.

A case very similar to the one under consideration is the case of Guiou et v Ryckman et,· 77 Neb. 833. In that case an agreement was entered into between Wallace and Ryckman, whereby Wallace agreed to convey a certain parcel of land upon the completion by Ryckman of the house on the land to be conveyed. In the opinion it is stated:

"The contract was plainly entered into by the parties for the purpose of having buildings erected on the lots, and this places it within the line of decisions of this court that hold that, where the vendor and vendee cooperate together in plans for the erection of improvements upon real estate covered by their agreement, the interest of the vendor, as well as that of the vendee, is bound for the payment of the liens for labor and material which have been furnished for such improvements." Citing many cases.

In the case of Miller v Mead, 28 NE, 387, the Court of Appeals of New York held:

That a contract for the sale of land, which obligated the vendee to erect six houses thereon, within a specified time, and in which the vendor agreed to advance the vendee a designated sum to partly pay the cost of their construction, was sufficient to show the vendor's consent that the buildings be erected, and rendered her interest in the land subject to such liens as might be filed for labor and material furnished for the construction of the houses.

While the Mead case involved the question of ownership under the New York statute, that question is not here, since Wurlitzer never parted with title to the realty in question, he remaining the owner at all times. To hold with the contention of Wurlitzer on the point would open the door to grave injustice. In cases of the development of property, or subdivisions, it would be easy to defeat the salutary effect of the mechanic's lien law. The owner could shift responsibility to an irresponsible contractor, and thus be relieved of all liability for construction cost. At the same time, he would secure the benefits of the improvements on his real estate, sought to be improved, at the expense of the laborers and material men.

While Wurlitzer may not have ordered the materials, he not only knew they were ordered, but knew they were going into the construction of the buildings, and not only approved the same, but furnished the money to pay for some of them on affidavits furnished and this in accordance with his contract with the B & O Company.

We are, therefore, of the opinion that Wurlitzer's rights are subordinated to those of the holders of the mechanic's liens, properly filed.

Many liens were filed on the property and are challenged separately and individually by counsel for Wurlitzer.

We have examined the record with reference to the liens and are in accord with the finding of the trial court as to the validity of the same.

The main ground for challenge of several of these liens is the defect in the description of the premises. As elsewhere stated, there were three houses builded on one single corner lot. The lot has never been subdivided and appears on the records as one lot. In the construction the houses were referred to as Jobs 631, 632, and 633, but there is nothing to show which part of the realty was or would be used for each particular house, or the different jobs. There seems to be no other way to describe the realty than as it existed on the record. It would seem that a description that would enable a party familiar with the locality to identify the premises would be a description with reasonable certainty, and would be sufficient, particularly so since there are no third parties interested to be affected thereby.

It might become necessary if a sale of the property was had to subdivide the realty to conform to the construction. This could be done without affecting the rights of the parties, or the value of the properties.

We are of opinion that the description is sufficient, and the liens, so far as the description is concerned, are valid.

Other objections to several of the specific liens were properly allowed by the trial court.

A like decree to that entered in the Court of Common Pleas may be entered here.

This conclusion disposes of the error case and the cross-petition of David Lupton Son's Company, which Company also appealed to this court, its lien having been denied by the trial court.

ROSS, PJ, and CUSHING, J, concur.