In re Estate of Robert J. McIlrath, Deceased. Arthur McIlrath et al., Petitioners, v. Mary B. McIlrath, Respondent.

410

Opinion filed June 4, 1934. Rehearing denied August 27, 1934.

D. L. DUTY, C. H. THOMPSON and LLOYD H. MELTON, for petitioners.

MILEY & COMBE and KANE & SCOTT, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Appellants, hereinafter referred to as petitioners, filed their petition in the estate of Robert J. McIlrath, deceased, which estate was in administration in the county court of Saline county. The petitioners, 18 in number, are a part of the residuary legatees under the will of said deceased, and the respondent is the surviving widow.

The petition was filed under sections 81 and 82, chapter 3, Cahill's Statutes, ¶¶ 82 and 83, and prayed that the respondent be cited to appear before the court to be interrogated concerning certain property alleged to belong to said estate and to settle the title and rights of the parties to such property.

The case was appealed to the circuit court and on a trial there with a jury, the court, at the close of all the evidence, granted respondent's motion for a directed verdict. Judgment was entered on the verdict and petitioners perfected their appeal to this court.

The question presented involves the title to $57,542.50, which was, at the time of the death of Robert J. McIlrath, on deposit in a savings account in the First Trust and Savings Bank of Harrisburg. For

a proper consideration of the points raised, it is necessary to consider, with other facts, the terms of a postnuptial contract between said decedent and respondent, his will and the terms upon which said deposit was made and the origin of the funds constituting the deposit.

Robert J. McIlrath and respondent were married November 17, 1913. She was then 48 and he was 69 years old. December 5, 1914, they entered into a postnuptial contract which recited that Robert J. McIlrath had considerable estate, consisting largely of personal property, which he had accumulated prior to their marriage, that he desired to so dispose of his estate so that after his death, his wife would have sufficient to support her in comfort during her life and that he could make such disposition of the remainder as he might desire. By the fourth clause, it was agreed that their residence property, a lot in Harrisburg, the household furniture and $10,000 in money would be sufficient to maintain and keep her for the remainder of her life after his death. The sixth clause is as follows:

"SIXTH: It is therefore mutually agreed by and between the said Robert J. McIlrath and the said Mary McIlrath, that the said Robert J. McIlrath will not dispose of his estate during his life except by will, but will keep the same for the maintenance and comfort of him and his said wife so long as they shall live as husband and wife, and will provide by his last will and testament that his said wife, shall have their home above described, the household goods and the sum of Ten Thousand Dollars which shall be payable before the remainder of the estate shall go to the payment of other legacies.

"That the said Mary McIlrath agrees that if her said husband shall not dispose of his said estate but will keep the same for their maintenance and comfort during the time they are husband and wife, and will

by his last will and testament give to her the home and household goods above described and the sum of Ten Thousand Dollars in money, in consideration thereof, she will accept the same in full for all that may be due her under the statute of the State of Illinois; and hereby consents and agrees with her said husband in consideration aforesaid, that her said husband may dispose of the remainder of his estate as he may desire and that she will not in any manner interfere with any disposition he may make of the remainder of his estate.''

May 2, 1916, Robert J. McIlrath executed his will which gave to respondent the property she was to have under the post-nuptial contract, except it does not refer to the household furniture. After providing for certain charitable bequests of $5,000, all the residue was bequeathed to certain collateral heirs of whom the petitioners are a part. Testator died June 30, 1932. The executor named in the will died before testator died. Respondent filed a petition to probate the will and nominated George O. Davenport as administrator with the will annexed. The will was admitted to probate.

The major part of the money in the savings account was interest, dividends and income from personal property, all of which belonged to deceased and the greater part of which had been accumulated by him after the date of the post-nuptial contract.

The savings account was opened in said bank January 5, 1927, and at that time Robert J. McIlrath and Mary McIlrath signed a contract as follows:

''We hereby agree to the By-Laws, Rules and Regulations of this Bank. It is hereby expressly agreed with

First Trust and Savings Bank
of Harrisburg, Illinois,

that all moneys deposited with said bank by either or both of the undersigned shall be placed by said bank

to the credit of us jointly, and may be withdrawn from, or paid out by said bank upon the request or order of both or either of us and that upon the death of either of us, the survivor shall have the absolute right to withdraw or be paid all moneys not then withdrawn.

Name R. J. McIlrath
Name Mary B. McIlrath''

The account was opened on said date with a balance of $38,000. This total was the proceeds of a check for $1,500 and two interest bearing certificates of deposit. Each of these certificates was payable to Robert J. McIlrath and Mary McIlrath.

From the time the account was opened to the date of the death of said deceased, there were three withdrawals aggregating $2,030.88. It does not appear who made the withdrawals. The account was increased by the adding of interest every six months and the making of other deposits. All deposits were made by deceased.

The account pass book was kept in the deceased's safety deposit box in said bank and was there at the time of his death. Deceased and his wife both had access to the box and after his death, she presented the pass book to the bank and caused the whole account to be transferred to her name.

In 1919, the legislature amended the statute in reference to joint tenancies or joint ownership of personal property with the right of survivorship, and by the proviso to section 2, chapter 76, Cahill's Statutes, ¶ 2, it is provided, "that when a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement per-

mitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made.''

In *Illinois Trust & Savings Bank v. VanVlack*, 310 Ill. 185, the court in construing said proviso said, ''It provides particularly for the right of survivorship, when a deposit in a bank shall be made in the names of two or more persons when an agreement permitting payment to any one of such persons, whether the other is living or not, was signed by all the persons at the time the account was opened or afterward.''

Respondent's rights in this deposit are created by virtue of the contract she and deceased signed with the bank at the time of opening the account. Her rights therein are not determined by the rules controlling joint tenancy or tenancy in common, nor by the rules governing gifts *inter vivos*.

Evidence admissible to prove or disprove an intention of a donor in the making of a gift *inter vivos* would have no bearing upon the questions involved in a proceeding to set aside a deposit agreement with provision for the right of survivorship. Evidence as to who had control of the bank pass book is not material in this case. *Reder v. Reder*, 312 Ill. 209. Petitioners concede deceased's signature is attached to the contract and that the legal effect of it was to create a joint account which was payable to the survivor but they contend that it was not the intention of deceased to have entered into a contract which gave respondent as survivor the whole of the deposit. In other words, they contend deceased misunderstood the legal effect of the contract. To sustain their contention that the contract was invalid, petitioners could have attacked the validity of its execution on the same grounds any similar contract might be attacked, such as fraud,

undue influence or mental incapacity, but a mistake in law as to the legal effect of a contract actually signed and fairly entered into is not grounds for avoidance.

"If an agreement or written instrument expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be that their intention would have been different if they had been correctly informed as to the law." *Holbrook v. Tomlinson,* 304 Ill. 579, 584.

Respondent in answer to the petition for a citation said she had the amount of the deposit and claimed it as her own by virtue of said deposit contract. The contract provided for by statute and regular on its face made a prima facie case for respondent and the burden was then on petitioners to prove that the contract had been entered into under such circumstances as to vitiate it. *Riggs v. Powell,* 142 Ill. 453.

Petitioners further contend that the deposit contract and the rights created thereunder in favor of respondent are in some way controlled and affected by the provisions of the post-nuptial contract.

The post-nuptial contract had one primary purpose, namely, to make ample provision for the wife if she should survive. As to the balance of any estate, deceased reserved the right to dispose of it as he might choose. He did not contract that such was to be given or devised to petitioners. He could give it to charity or dispose of it to any person he might select, including his wife. Respondent covenanted in said contract that in the event of his death before hers, she would take the property specified in the contract in full for

all that would be due her under the statute of this State; that is, she would take the benefits provided for in the contract in lieu of all that any statute would give her as surviving widow. Her rights in the deposit are created by contract and not by reason of any statute which makes provision for interest of widows in their husband's estate and therefore she did not by the post-nuptial contract bind or estop herself from taking the benefits under the deposit contract. By the post-nuptial contract, she further covenanted that her husband might dispose of the remainder of his estate as he might desire. There was nothing in such covenant that would estop her from taking the remainder or a part thereof, if her husband should elect to give it to her. The effect of the post-nuptial contract was that she could not be forced to take less than the contract awarded, but it did not prevent her from taking more if her husband gave it to her.

The deceased in the exercise of the right reserved in the contract to dispose of the remainder of his estate elected to divide it in two ways. By the residuary clause of the will he made provision for the petitioners, and by the deposit contract he disposed of the deposit. By the making of the will, petitioners had no right in the residue of his property; he could change or destroy the will or dispose of the residue of his estate in any way he might elect.

There was nothing in the post-nuptial contract or will that prevented deceased from contracting in reference to the deposit and there is nothing in either of said instruments that in any way affects the rights of respondent in said deposit or that constitutes her a trustee holding a fiduciary capacity in reference to said bank account and the fact that she signed the petition to probate the will would not constitute an election to take the provision under the will and post-

nuptial contract to the exclusion of the benefits under the deposit contract.

The sole question for the trial court to determine on respondent's motion for a directed verdict was whether there was any evidence bearing upon the validity of the deposit contract, which, assuming its truth, fairly tended to prove petitioners' contention in reference thereto. *Libby, McNeil & Libby v. Banks,* 209 Ill. 109; *Chicago & N. W. Ry. Co. v. Dunleavy,* 129 Ill. 132.

The deposit contract was signed by deceased in the bank in the presence of George O. Davenport, an officer of said bank. He is the only witness testifying to its execution. He testified in this hearing to a state of facts that would tend to prove the contract was signed voluntarily and was fairly entered into, while by way of impeachment, it appeared that the witness had made statements when not under oath and had testified to facts in the county court which would tend to prove that deceased's signature was attached to the contract under circumstances where he did not know what he was executing. This and other discrepancies appearing in his testimony does under the facts in this case lead us to the conclusion that the court erred in directing the verdict for the respondent.

For the reasons assigned, the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*