(No. 24249.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JOSEPH B. POLHEMUS, Appellant.

*Opinion filed October 22, 1937.*

C. C. CRAIG, and I. N. HERREID, for appellant.

OTTO KERNER, Attorney General, (STANLEY WATSON, and ALFRED W. BLACK, of counsel,) for appellee.

Mr. JUSTICE HERRICK prepared the opinion of the court:

William B. Polhemus of Fulton county died testate May 18, 1935, then aged about seventy-nine years. His will bearing date of April 1, 1935, was thereafter admitted to probate. By its terms, his residuary estate was divided equally between his nephews and nieces and the son of a deceased niece. Appellant is one of the nephews. The executors of the will filed a transfer tax return with the county judge showing the net taxable value of the estate received by each beneficiary. A transfer tax on the share received by each was fixed upon that return. This tax is not objected to. A further tax of $420 was assessed by the county judge on the basis of schedule B-2 of the return made by the executors, as follows: "Within two years prior to decedent's death he gave and transferred to Joseph B. Polhemus, one note in the amount of $7000 signed by the said Joseph B. Polhemus and secured by a mortgage on real estate of equal or greater value than the principal of said note." Joseph B. Polhemus appealed from that order. A trial was had in the county court where the order previously made was affirmed. Appellant brings the record directly to this court.

The section of the Inheritance Tax act involved so far as material is, "A tax shall be and is hereby imposed upon

the transfer of any property, * * * in trust or otherwise, to persons, * * * in the following cases: * * * When the transfer is of property made by a resident, * * * by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. * * * Every transfer by * * * gift made within two years prior to the death of the * * * donor without an adequate valuable consideration in money or money's worth, shall, *prima facie,* be deemed to have been made in contemplation of death within the meaning of this act." (State Bar Stat. 1935, chap. 120, sec. 1, par. 396.) No claim is made that there was any consideration for the transfer from the decedent or for the release of the trust deed, or that the real estate covered by the trust deed was inferior in value to the amount of the note.

Appellant first asserts that that portion of the above quoted section, "made within two years prior to the death of the * * * donor * * * shall, *prima facie,* be deemed to have been made in contemplation of death," etc., is obnoxious to the due process clauses of both the State and Federal constitutions. It will be noted that the presumption is not made conclusive by the act but *prima facie* only. While a conclusive presumption created by statute is unconstitutional, a rebuttable presumption so originated is constitutional. (*Turpin* v. *Lemon,* 187 U. S. 51, 47 L. ed. 70; *Schlesinger* v. *Wisconsin,* 270 id. 230, 70 L. ed. 557; *Heiner* v. *Donnan,* 285 id. 312, 76 L. ed. 772; *Mobile, Jackson and Kansas City Railroad Co.* v. *Turnipseed,* 219 id. 35, 55 L. ed. 78.) The clause above quoted stating what facts constitute a *prima facie* case, merely lays down a rule of evidence. Such authority is clearly within the power of the General Assembly and is not violative of the due process clause of either the State or Federal constitutions. *Mobile, Jackson and Kansas City Railroad Co.* v. *Turnipseed, supra.*

A statement of the testimony introduced at the hearing will be necessary to an understanding of the further errors charged by appellant. The record shows that on December 10, 1931, decedent made a loan to appellant of $7000, evidenced by the note of appellant and his wife, Louise B. Polhemus, payable to themselves and by them endorsed, and secured by a trust deed made by them to John W. Gaddis, trustee, on land owned by appellant. Gaddis was president of the local bank. At the hearing in the county court appellant testified that this loan was not sought by him but was made at the suggestion of the deceased who, he averred, was an unusually generous and charitably minded man. Appellant further testified that on January 17, 1934, his uncle brought to appellant's home the note, together with the trust deed and the release thereof executed by the trustee, and delivered them personally to appellant; that he lived across the road from his uncle and saw and talked with him every day prior to that time; that he was then, and had been, in good health, very active physically, was regularly performing considerable manual labor and attending generally to his business affairs; that his mind was good. Appellant's wife testified that while she did not witness the actual surrender of the note, trust deed and release, she knew decedent delivered these instruments to her husband at their home in January, 1934. Both appellant and his wife fixed October, 1934, as the date when Dr. Wasson was first called to treat the testator, and said that decedent previously had been in his normal good health.

Dr. Wasson, who had been decedent's family physician and had known him over forty years, testified that he saw him frequently and was well acquainted with his mental and physical condition from 1931 to the time of his death, in 1935; that he was in good physical condition until he developed prostatitis four or five months prior to January, 1934. The doctor then treated the deceased for prostatitis and a dicrotic heart from which diseases he later died; that

witness had informed decedent in the early part of his illness of the nature thereof and his condition. The physician testified decedent's physical condition in January, 1934, was very precarious. Dr. Wasson, however, was not certain of the dates, as he said he had not consulted his records but was testifying from memory.

Hattie M. Beals, a niece, testified her uncle became ill in October, 1933, and went to the hospital in that month. He had the same nurse, both at the hospital and at home, from that time until his death. He was ailing a year and a half before he died. On October 11, 1933, learning he was indisposed, she called at his home and found him a very sick man. When she arrived, unannounced, she found appellant's wife in decedent's bedroom asking him to deliver a certain paper to her and heard her say, in substance, "I will have to have those papers before they will release it at the bank."

Peter H. Schleich, a bank clerk, said he looked after decedent's business for two or more years prior to his death. Glenn Ratcliff, an assistant Attorney General and the attorney for the executors, testified that he was called to the home of William B. Polhemus near the end of March, 1935, to draw a will for him. The decedent directed him as to the disposition he desired to make of his estate. Ratcliff prepared the will in accordance with these instructions and returned on the following Monday, April 1. On this occasion he read the draft of the will to Polhemus. The testator then told this witness he had thought the matter over since giving his first instructions and believed he would alter that portion of the will and let the matter stand without charging the note against appellant's share of the estate. The attorney withdrew two pages from the will as originally written and on the same day re-wrote them to conform to the changes the testator requested. The will was then signed and witnessed. These two pages withdrawn from the original draft of the will were produced by the

witness who stated they were in exactly the same condition as when removed from the will on April 1. It appears therefrom that the will, as originally prepared, recited that appellant was indebted to the testator in the sum of $7000 upon a note secured by a trust deed given to John W. Gaddis, trustee; that appellant had secured possession of the note and had caused the trust deed to be released without a voluntary surrender of the note by the testator. The tentative will, by its terms, further required appellant to deliver the note to the executors of the testator and voluntarily to consent to a cancellation of the release of the trust deed before he should be entitled to any share in the estate of decedent. Provision was made thereby that, if appellant refused to surrender the note, trust deed and release, the executors might bring any suit or action necessary to recover the amount due on the note. No other witnesses testified.

It is apparent that the testimony given by appellant and his wife is in irreconcilable conflict in many material particulars with that of the other witnesses. Whether a gift is made in contemplation of death is primarily a question of fact. (*People* v. *Northern Trust Co.* 324 Ill. 625; *People* v. *Kelley,* 218 id. 509.) Appellant contends that, under the facts as proved, the gift to him was made by decedent at the time the loan was made on December 10, 1931, and, therefore, clearly without the provisions of the statute. There is no direct evidence to support that claim. The mere fact that deceased required appellant to give a note secured by a trust deed on real estate, negatived any reasonable inference that a gift to appellant was then intended. Appellant next asserts that if the gift was not made in 1931 that it was consummated on January 17, 1934, the date he and his wife fixed as the time when they say his uncle came to their home and presented appellant with the note, trust deed and release, while decedent was then in good health. The words "in contemplation of death," as

used in the Inheritance Tax act, denote that apprehension of death arising from some existing disease or infirmity of such a character as prompts one to make a disposition of his property. (*People* v. *Forman,* 322 Ill. 223; *People* v. *Northern Trust Co. supra.*) The burden of proving all facts required to create a valid gift *inter vivos* is on the donee. The essential facts to be established are the delivery of the property by the donor to the donee, with the intent to pass the title. To sustain the gift, the proof must be clear and convincing. Mere possession of property by one claiming it as a gift after the death of the owner may be insufficient, alone, to prove a valid gift. (*Rothwell* v. *Taylor,* 303 Ill. 226.) Possession of the note by appellant, prior to and after decedent's death, is admitted. That circumstance, however, is not conclusive that such possession was rightful. To give validity to a gift *inter vivos* by decedent, his intention to make it such was material. The original of the unsigned will, prepared in accordance with testator's express instructions, shows clearly that he had not then intentionally given the note to appellant. In this connection some supporting inference may properly be drawn from the statement the witness Beals overheard the wife of appellant make to decedent in October, 1933. The appellant failed to establish, by a preponderance of the evidence, a prior gift of the note to him. The time the gift was made must, of necessity, be fixed as of the date when the original draft of the will was rejected by the testator and the modified will made and signed on April 1, 1935.

A gift made when the donor is looking forward to his death as impending, and in view of that event, is within the purview of the statute. (*Rosenthal* v. *People,* 211 Ill. 306.) The evidence amply warranted the court in finding the gift was made by decedent in contemplation of his death. Appellant says, however, that if the benefaction was the return of the note and trust deed, then the alleged gift was to appellant and his wife, since it was a joint note. The

facts do not support this argument. Appellant, himself, testified the loan was made by his uncle to him. The testator's proposed will as first written corroborates this fact. The implication is obvious that Mrs. Polhemus joined in the note as surety for her husband, the admitted recipient of the gratuity.

It is next asserted the court erred in refusing the admission of evidence offered by appellant showing the intention of decedent. Appellant sought to prove the impelling motive of the decedent was generosity, and not a gift in contemplation of death, by showing that the testator had previously made liberal donations for charitable purposes in his lifetime. This line of evidence was not pertinent to the instant gift and its admission was properly denied. The proved acts of the donor respecting the gift were decisive of his intentions.

Lastly, it is urged that the testimony of the attorney who drew the will was improperly admitted. On that phase of the case, the argument is made (1) that the intent of the testator is always to be gathered from the language of his will; (2) that there was nothing vague or uncertain about the terms of the will requiring construction; (3) that it contained no reference to any previous gift and, therefore, the language of the will disproves the claim that the gift was made *causa mortis*. The testimony of this witness did not deal with the contents of the will but with the provisional instrument as first written. The purpose of this evidence was to show the intention of the testator respecting the note in question. It was competent for that purpose.

The judgment of the county court of Fulton county was correct and is affirmed.

*Judgment affirmed.*