In the Matter of Estate of Edward Schneider, Deceased. Frank J. Link, Executor of Estate of Edward Schneider, Deceased, Appellee, v. William M. Ralston, Appellant.

Gen. No. 46,143.

Opinion filed May 19, 1954. Released for publication July 2, 1954.

A. CHARLES FORD, of Chicago, for appellant; CHARLES D. SNEWIND, of Chicago, of counsel.

FRANK J. LINK, *pro se,* of Chicago, for appellee; THEODORE SHARF, of Chicago, of counsel.

Mr. Justice Lewe delivered the opinion of the court.

Frank J. Link, executor of the estate of Edward Schneider, deceased, filed a petition in the probate court of Cook county alleging in substance that William M. Ralston is in possession of funds on deposit in the name of the deceased and Ralston in the North-West Federal Savings and Loan Association of Chicago, hereinafter called the "Association," and that Ralston has no valid claim to these funds. Pursuant to the prayer of the petition a citation was issued and upon a full hearing it was dismissed and the respondent Ralston was discharged. From that order the executor appealed to the superior court where after a trial *de novo* the court found that the funds in the Association were the property of the deceased and ordered Ralston to pay the funds to the executor. Ralston appeals.

May 10, 1952 Ralston and Schneider executed two identical agreements at the Association involving two savings accounts aggregating $5,850.81, which read:

"Joint Savings Account. One signature only required for withdrawal. Account No. 17434, "Schneider, Edward (Mr.) or Ralston, William M. (Mr.)

"Type all names: .................................
(Last Name) (First Name) (Middle Name)

"As joint tenants with right of survivorship and not as tenants in common, the undersigned hereby apply for a membership and for a .......................
savings account in the North-West Federal Savings & Loan Association and for issuance of evidence of membership in the joint names of the undersigned as joint tenants with right of survivorship and not as tenants in common. The signatures of the undersigned are shown below, and the Association is hereby au-

thorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any savings account in said Association held by the undersigned, whether the other person or persons named hereon be living or not. Payment or delivery of a receipt or acquittance signed by any one of the undersigned shall be a valid and sufficient release and discharge of said Association. The undersigned hereby authorizes the said Association to accept drafts, checks, money orders and other credit instruments for credit of this account, whether payable to either one or all of the undersigned, and if not endorsed to supply such endorsement as may be required.

"(1) /s/ Edward Schneider   (2) /s/ Wm. M. Ralston
    550 N. Mason Ave.       2456 N. Normandy
    Chicago 30           Chicago 35"

An identical agreement was executed for Account No. 17435. Printed forms of the agreements were furnished by the Association.

The history of the transaction may be briefly stated. In response to a telephone call of May 10, 1952 from Schneider, Ralston went to Schneider's home and soon after one Emil Kohut, an old acquaintance, also came to the Schneider home. Schneider told Ralston that he was "generally upset" and that he wanted Ralston's name on the savings accounts at the Association "so that in case I am sick you can go and get the money for me." Ralston suggested to Schneider that he place Kohut's name on one of the accounts, or put somebody else, if he could, in his (Ralston's) place. Kohut refused to "become one of the joint signatures" on Schneider's accounts. According to Kohut's testimony, three or four weeks prior to May 10, 1952 Schneider,

while visiting at the Kohut's home stated to Kohut "By golly, if I ever get sick I don't know how I will ever get my money out of the bank. I want somebody else on my bank account."

Ralston, who was called by the executor as an adverse witness, admitted that all of the money in the two accounts here in controversy was the sole and exclusive property of Schneider and that he never deposited any money in these accounts.

According to the allegations in the petition, shortly before the death of Schneider all of his property was bequeathed to his brother. No answer was filed to the petition in the probate or the superior court by Ralston or the Association. Objections were made to the testimony of Ralston and Kohut by the respondent. Rulings on the objections were reserved and later the testimony of these witnesses was received in evidence.

Respondent Ralston's contention is that the instruments in writing signed by the parties and accepted by the bank created a joint tenancy with the right of survivorship by virtue of the provisions of chapter 76, paragraph 2, subparagraphs a, b and c, Illinois Revised Statutes [Jones Ill. Stats. Ann. 70.03, subds. (a), (b), (c)], and that the testimony of Ralston, an adverse witness, and Kohut should not have been received in evidence.

In *Cuilini v. Northern Trust Co.,* 335 Ill. App. 86 (1948), involving the survivor's right to funds in joint accounts, the basic question presented was whether, in the absence of fraud, duress or mistake, parol evidence is competent to alter or modify the deposit contracts. We held that, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intentions of the parties and that the parol evidence upon which the plaintiff relied was inadmissible to modify the terms of the written agreement between the parties and the bank. In deciding *Cuilini v. Northern*

563

*Trust Co.* we considered *Matthew v. Moncrief,* 77 App. D. C. 221, 135 F.2d 695 (1943) as the best reasoned and most analogous. From a reading of that case it appears that after a careful search and analysis of cases in many jurisdictions, including Illinois, the Court of Appeals of the District of Columbia, speaking through the late JUSTICE VINSON while a judge of the Court of Appeals, held that when the intention of the parties is expressed in a written instrument which says in plain terms that the deposit is the joint property of both and that it is to go upon the death of either to the survivor, such an expression is conclusive and preclusive of all parol contradiction except on the ground of fraud or mistake.

Under almost identical circumstances, the question presented in *Matthew v. Moncrief* was determined in the later case of *Murray v. Gadsden,* 91 App. D. C. 38, 197 F.2d 194, also in the Court of Appeals of the District of Columbia. That court refused to adhere to the doctrine announced in *Matthew v. Moncrief.* In *Murray v. Gadsden,* 91 App. D. C. 38, 197 F.2d 194, the court held in effect that the parol evidence rule does not forbid inquiry into the object of the parties in executing and receiving a written instrument. In recognizing and applying one of the exceptions to the subtle and difficult parol evidence rule the court said, at page 201:

"This is a salutary exception to the parol evidence rule, because a court of equity should not permit the rule to defeat the admitted, or clearly proved, intention of the parties. It should be remembered too that a writing which is called a contract is merely a memorial of the parties' agreement. It is simply evidence of the agreement and, if it is clear that it does not accurately reflect what the parties had agreed upon, monstrous injustice would be done by forcing upon them a contract which they had not actually made."

On the question presented here some of the decisions in the courts of review of our State are difficult to reconcile. The confusion in this area of the law appears to have resulted from the diversity of standards in many jurisdictions. See Volume 43, Illinois Law Review, page 874.

In *Cuilini v. Northern Trust Co.*, 335 Ill. App. 86, this court adopted the contract theory, which at that time seemed to be supported by the weight of authority, thus holding that a complete and unambiguous joint deposit agreement conclusively determines the rights of the parties.

Chapter 3, Article 15, section 337, Illinois Revised Statutes 1951, State Bar Edition [Jones Ill. Stats. Ann. 110.434], relating to citation to recover property and discover information, reads:

"At the hearing the court may examine the respondent on oath whether or not the petitioner has proved the matter alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title, and the right of property, and may enter such orders and judgment as the case requires."

■ In considering similar provisions of the former Act the court said in *Keshner v. Keshner,* 376 Ill. 354, at page 359:

"The proceeding is purely statutory and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law on demand of the parties, where questions arise concerning claims of adverse title or interest."

To the same effect see *In re Estate of Jarmuth,* 329 Ill. App. 619.

In *Skidmore v. Johnson,* 334 Ill. App. 347, this court held that a citation proceeding in the probate court is

a special statutory proceeding in the nature of an equitable proceeding, in which both the legal and equitable rights of the parties are to be considered by the court in its determination of questions of title.

In the present case Ralston admits that he did not contribute any part of the funds in the joint accounts, nor does he claim a gift. Moreover, there is no evidence tending to prove that there was any consideration moving from Ralston to the deceased. On the contrary, the uncontroverted evidence shows that the joint account agreements here in controversy were made only for the convenience of the deceased.

In our view the application of the rule announced in *Cuilini v. Northern Trust Co.* not only disregards the equitable rights of the parties but makes the law an instrument of injustice and should no longer be followed in cases like the instant proceeding. This rule is reminiscent of the significance of the written word in the early common law where, if the formal word was given, a party was bound, however unrighteous the circumstances may have been under which he gave it.

We are of the opinion that the trial court properly admitted the testimony of the witnesses Ralston and Kohut for the purpose of proving that the joint account agreements signed by both parties did not express their actual intention.

For the reasons given, the judgment is affirmed.

*Judgment affirmed.*

FEINBERG, P. J. and KILEY, J., concur.