(No. 33346.—)

IN THE MATTER OF THE ESTATE OF EDWARD SCHNEIDER. —(FRANK J. LINK, Exr., Appellee, *vs.* WILLIAM R. RALSTON, Appellant.)

*Opinion filed June 16, 1955.*

A. Charles Ford, of Chicago, (Charles D. Snewind, of counsel,) for appellant.

Frank J. Link, of Chicago, appellee, *pro se,* (Theodore Sharp, of counsel.)

Mr. Justice Schaefer delivered the opinion of the court:

This case turns upon the admissibility of parol evidence to show the actual ownership of funds deposited in a joint bank account "with right of survivorship." Prior to May

10, 1952, Edward Schneider had two accounts aggregating $5850.81 in the North West Federal Savings and Loan Association of Chicago. On that date he took William M. Ralston with him to the association, withdrew the money from his accounts and deposited it in two joint accounts in his name and Ralston's. The following document was signed by Schneider and Ralston:

"Joint Savings Account. One signature only required for withdrawal. Account No. 17434.

"Schneider, Edward (Mr.) or
"Ralston, William M. (Mr.)
"Type all names: ...........................................
                   (Last name)   (First name)   (Middle Name)

    "As joint tenants with right of survivorship and not as tenants in common, the undersigned hereby apply for a membership and for a........savings account in the North-West Federal Savings and Loan Association and for issuance of evidence of membership in the joint names of the undersigned as joint tenants with right of survivorship and not as tenants in common. The signatures of the undersigned are shown below, and the Association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any savings account in said Association held by the undersigned, whether the other person or persons named hereon be living or not. Payment or delivery of a receipt or acquittance signed by any one of the undersigned shall be a valid and sufficient release and discharge of said Association. The undersigned hereby authorizes the said Association to accept drafts, checks, money orders and other credit instruments for credit of this account, whether payable to either one or all of the undersigned, and if not endorsed to supply such endorsement as may be required.
"(1) /s/ Edward Schneider      (2) /s/ Wm. M. Ralston
      550 N. Mason Ave.           2456 N. Normandy
      Chicago 30                 Chicago 35
"Dated May 10, 1952       Introduced by RO3-8628

"* The names on any membership certificate, issued pursuant to this application, must be followed by the words 'as joint tenants with right of survivorship and not as tenants in common.' Space for Identification Information on reverse side."

After Schneider's death his executor filed a petition in the probate court of Cook County alleging that the funds in the accounts belonged to the estate and not to Ralston. The probate court dismissed the petition. Upon appeal to the superior court of Cook County there was a trial *de novo*. Ralston was called as an adverse witness and testified over objection that all of the money in the accounts was deposited by Schneider and none by Ralston, that Schneider at no time told Ralston that he wanted Ralston to have any of the money in the accounts, and that when they went to the bank on May 10, 1952, Schneider said to him, "I want your name on these bank accounts so that in case I am sick you can go and get the money for me." The superior court found that the funds were the property of the estate. The Appellate Court affirmed, (2 Ill. App. 2d 560) and we granted leave to appeal, primarily because of a conflict in the decisions of the Appellate Courts with respect to this problem. See *Cuilini* v. *Northern Trust Co.* 335 Ill. App. 86; *Johnson* v. *Mueller,* 346 Ill. App. 199.

Appellant's position is that the instrument executed by him and Schneider was a contract between them, the terms of which establish appellant's right to the funds deposited, and that parol evidence is inadmissible to vary the terms of that agreement.

We note initially we are here concerned only with the rights of the depositors between themselves. That an instrument such as that executed by Schneider and the appellant protects a bank against a claim by either of the depositors if payments are made to them in accordance with the terms of the agreement, is settled by statute. Ill. Rev. Stat. 1953, chap. 76, par. 2.

The familiar joint bank account has had an uneasy career in the courts because the relationships which it contemplates do not fit readily into common-law categories. The four unities of the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and

the difficulty of applying the common-law concept of joint tenancy to a fluctuating *res* have caused difficulties. Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems stemming from joint bank accounts, for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties. The varying methods adopted by the courts in meeting these problems appear in the cases collected and discussed in the following annotations: 48 A.L.R. 189; 66 A.L.R. 881; 103 A.L.R. 1123; 135 A.L.R. 993; 149 A.L.R. 879.

The particular problem involved in this case has not been before this court. Basic to its solution is an analysis of the transaction between the parties and the bank. This case is typical of many others in which the sole owner of funds in a bank account desires to establish a joint account with another person, and the question of the right of the survivor arises upon the death of the original owner of the funds. In such cases generally, as in this case, it is not seriously suggested that there was any consideration for the transfer of an interest in the funds from the original owner to the survivor. To say, as appellant here says, that the agreement is a third party beneficiary contract, begs the question by assuming that the contract is for the benefit of the beneficiary. If any interest in the funds was transferred, the transfer must have been by gift or bequest. If the transfer was by bequest, it was testamentary in character and ineffective under the Statute of Wills. (L.R.A. 1917C 550.) If the transfer was by gift, the problem of consideration is of course eliminated.

This court has held that the relationship established by a joint bank account is not that of joint tenancy, but rather is one which is governed by the provisions of the agreement between the bank and the depositors. (*Erwin* v. *Felter,*

283 Ill. 36; *Illinois Trust and Savings Bank* v. *VanVlack*, 310 Ill. 185; *Reder* v. *Reder*, 312 Ill. 209.) The difficulties involved in reaching this result are disclosed in the dissenting opinions of Mr. Justice Thompson in the *VanVlack* and *Reder cases*. These decisions, as the dissenting opinions make clear, were intended to meet the objections that the statute then in effect did not permit joint tenancies in personal property, and that a joint tenancy could not exist when the property was unspecified and when one joint tenant could terminate the right of survivorship by withdrawing the entire amount. Under these decisions the subject of the gift is not the funds on deposit in the account, but rather an interest in the account, or a power to deal with the funds on deposit. This is also the view which has been taken by courts of other jurisdictions which have also rested the right to create a joint bank account upon contract. *Goldston* v. *Randolph*, 293 Mass. 253, 199 N.E. 896, 899; *Beach* v. *Holland*, 142 Pac. 2d 990.

Appellant's argument that these decisions also hold that evidence bearing upon donative intent is inadmissible is not correct. The court, in characterizing the relationship as one arising out of contract, was concerned only with the minimum legal sufficiency of the agreement to create that relationship and not with necessity or manner of showing the donative intent which is required to sustain a valid *inter vivos* gift. The cases principally relied upon by this court in the *Felter, VanVlack* and *Reder cases* were *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 449, 111 N.E. 371, and *New Jersey Title Guaranty and Trust Co.* v. *Archibald*, 91 N.J. Eq. 82. In each of these cases, the intention of the donor was a significant factor in the conclusion reached. It has been pointed out that in the Massachusetts case it was found as a fact that in making the changes in the bank accounts the original depositor intended to give and transfer a joint interest in them to his sister. (*Bradford* v. *Eastman*, 229 Mass. 499, 118

N.E. 879, 880.) And in the New Jersey case the court said: "The contract entered into by the bank with the mother and her daughter exhibited a donative purpose from donor to donee, (not one merely for use and convenience of the donor,) and hence constituted a valid gift."

The language upon which appellant's contention is principally based is found in *Illinois Trust and Savings Bank* v. *VanVlack,* 310 Ill. 185. In that case it was contended that because the pass book was retained by the donor throughout her life the gift was incomplete. In disposing of that contention the court pointed out that under the terms of the agreement each party had an equal right to possession of the bank book, and that since both could not have actual manual possession at the same time, the possession of one was for the benefit of both. Having thus disposed of the contention, the court said, "We do not regard evidence of possession of the pass-book as material. Under the contract shown by the writings the right of the parties in the deposit was equal, and evidence of the inconsistent words or acts of the parties is not competent."

The court went on to cite cases from other jurisdictions in which "The retention of the exclusive possession and control of the pass-book" was "held not to be decisive of the question of intent or of the joint ownership of the deposit and the final ownership of the survivor." From a consideration of the opinion in the *VanVlack case* it is clear that the question decided was the materiality of the item of evidence to show donative intention, and that the statement of the court that "evidence of the inconsistent words or acts of the parties is not competent" was inadvertent.

*Bolton* v. *Bolton,* 306 Ill. 473, involved a promissory note payable to the order of "Alexander Bolton or wife, M. J. Bolton." After Bolton's death a controversy arose between his heirs-at-law and his widow as to the ownership of the note. This court reviewed the evidence and

concluded that the trial court was correct in holding that it failed to show any intention that Mrs. Bolton was to have any interest in the note. *Erwin* v. *Felter,* 283 Ill. 36, was analyzed at length in the opinion in the *Bolton case* because the Appellate Court had considered it to be conclusive in favor of Mrs. Bolton. Concerning that case the court said: "The controlling problem involved in a case like the one just cited is to ascertain whether the depositor intentionally and intelligently created the condition embracing the necessary elements of joint ownership. There must be an intent to do so by the party creating the condition. The *Erwin case* and the cases cited in the opinion are authority for the rule,—and we think it the general rule,—that the facts and circumstances surrounding the transaction, and the happenings pertaining to such transaction thereafter, may be inquired into for the purpose of aiding the court in ascertaining the intention of the parties."

To establish a gift, the proof must be clear and convincing, (*People* v. *Polhemus,* 367 Ill. 185; *Rothwell* v. *Taylor,* 303 Ill. 226,) and the burden is upon the alleged donee to establish the existence of a donative intent. (*Bolton* v. *Bolton,* 306 Ill. 473.) The decisions of this court relied on by appellant go no further than to indicate that the deposit agreement tends to show a donative intent on the part of the original owner of the funds, and that the intention so manifested, in the absence of contrary evidence, is sufficient to establish ownership in the survivor by virtue of the contract upon the death of the original owner. The form of the agreement, however, is not conclusive as to the intention of the depositors between themselves.

It is also suggested by the appellant that his testimony was insufficient to establish that the joint accounts were created for Schneider's convenience in the event of anticipated illness. But we agree with the trial court and the

Appellate Court that his testimony was sufficient to show that the actual ownership of the money in the accounts remained in Schneider.

At the time when the transaction involved in this case occurred section 2(c) of the Act concerning Joint Rights and Obligations (Ill. Rev. Stat. 1951, chap. 76, par. 2(c)) did not expressly refer to savings and loan associations. (Cf. Ill. Rev. Stat. 1953, chap. 76, par. 2(c); Laws of 1953, p. 371, sec. 1.) Neither party, however, raises any question on this point, and both of them appear to regard the statute as being effective, if at all, by virtue of paragraph (a) of that section.

In our opinion the judgment of the Appellate Court was correct and it should be affimed.

*Judgment affirmed.*

Mr. JUSTICE HERSHEY, dissenting:

I dissent from the majority opinion for the following reasons: (1) Until the instant case, the reviewing courts of Illinois have consistently refused to approve the admission of parol evidence to show an intent contrary to that expressed in a clear, unambiguous agreement creating a joint bank account with right of survivorship, unless the evidence tended to establish mental incapacity, mistake of fact, fraud, undue influence or duress. (2) There is a reasonable basis for both the theory heretofore adopted by the courts of Illinois (the contract theory) and the substantive rule of contract law applied (the so-called parol evidence rule). (3) In the absence of legislation so requiring, the overruling and qualifying of precedent which is clearly determinative of the issue will create uncertainty and confusion in this field of law, and because of implications that may logically be derived from the majority opinion, cause uncertainty and confusion in other analogous situations. (4) Even under the theory adopted by the majority opinion, the evidence adduced is insufficient to over-

come the clearly expressed intent of the deceased as to the disposition of the property.

In this case, there is nothing to establish that at the time Schneider signed these instruments he did not intentionally and knowingly sign them with the object of being bound by the clear, unambiguous provisions thereof. Moreover, it is recognized that the instruments were contracts, which are not said to be void or voidable because of illegality, fraud, mistake or any other reason. Nor is there any showing that the parties did not assent to these writings as the complete and accurate integration of their agreements. Such being this particular case, I do not believe parol evidence should be admitted to show an intent on the part of Schneider contrary to that expressed in the agreements.

In the application of the parol evidence rule to joint tenancy accounts, where the funds belonging to the depositor are placed in a bank account in his name and the name of another as joint tenants with the right of survivorship, courts of various jurisdictions have adopted different theories.

In a few States, notably New York and California, there are statutes which express the public policy of the State to prohibit parol evidence in the absence of fraud or undue influence. (N.Y. Banking Law, McKinney, 1950, §§ 134, subd. 3, 394, subd. 1; California Banking Code, Deering, 1949, § 852.) In States where there is no specific statute in force, courts generally have adopted one of three theories: (1) a gift theory (48 A.L.R. 191-202; 66 A.L.R. 882-90; 103 A.L.R. 1124-32; 135 A.L.R. 994-1006); (2) a trust theory (48 A.L.R. 202-3; 66 A.L.R. 890-1; 103 A.L.R. 1132-3; 135 A.L.R. 1006-7); or (3) a contract theory (103 A.L.R. 1140-1; 135 A.L.R. 1021-3).

In jurisdictions were the gift theory is relied upon, parol evidence may often be introduced to show an intent different from that expressed in the instrument. Where

the trust theory is adopted, limited to cases where the depositor alone signs the instrument, parol evidence may be introduced to show he intended to create a trust with respect to the deposit. Under the contract theory, however, the rights of the parties are governed by rules applicable to written contracts generally. This means that if the terms of the agreement are clear and unambiguous, parol evidence is inadmissible to vary those terms or to show an intent contrary to that expressed in the agreement, in the absence of grounds such as mental incapacity, mistake of fact, fraud, undue influence or duress.

With the exception of the instant Appellate Court decision, the reviewing courts of Illinois have consistently applied the contract theory to determine the rights of parties who have signed an agreement creating a joint account with the right of survivorship. *In re Estate of Wilson,* 404 Ill. 207; *Illinois Trust and Savings Bank* v. *VanVlack,* 310 Ill. 185; *Erwin* v. *Felter,* 283 Ill. 36; *Reder* v. *Reder,* 312 Ill. 209; *Cuilini* v. *Northern Trust Co.* 335 Ill. App. 86; *In re Estate of McIlrath,* 276 Ill. App. 408; *In re Estate of Halaska,* 307 Ill. App. 183; *In re Estate of Koester,* 286 Ill. App. 113. *Cf. Engelbrecht* v. *Engelbrecht,* 323 Ill. 208; *Lindner and Boyden Bank* v. *Wardrop,* 370 Ill. 310.

In the *McIlrath case,* where the facts were in all essentials identical with those in the instant case, the court said: "Respondent's rights in this deposit are created by virtue of the contract she and deceased signed with the bank at the time of opening the account. Her rights therein are not determined by the rules controlling joint tenancy or tenancy in common, nor by the rules governing gifts *inter vivos.* Evidence admissible to prove or disprove an intention of a donor in the making of a gift *inter vivos* would have no bearing upon the questions involved in a proceeding to set aside a deposit agreement with provision for the right of survivorship. * * * Petitioners concede

deceased's signature is attached to the contract and that the legal effect of it was to create a joint account which was payable to the survivor but they contend that it was not the intention of deceased to have entered into a contract which gave respondent as survivor the whole of the deposit. In other words, they contend deceased misunderstood the legal effect of the contract. To sustain their contention that the contract was invalid, petitioners could have attacked the validity of its execution on the same grounds any similar contract might be attacked, such as fraud, undue influence or mental incapacity, but a mistake in law as to the legal effect of a contract actually signed and fairly entered into is not grounds for avoidance." 276 Ill. App. 408, 414-5.

Indeed, in a case decided by the same Appellate Court which decided the instant case, *Cuilini* v. *Northern Trust Co.* 335 Ill. App. 86, (petition for leave to appeal denied,) the court followed the prevailing law of this State, saying at pages 90-1 : "The contracts executed by the decedent and defendant state in clear and unequivocal language that the deposits are the joint property of decedent and defendant and that upon the death of either shall go to the survivor. The rule has been repeatedly announced that, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties. * * * Defendant's rights in the joint accounts are created by the contracts and not by rules controlling joint tenancies or gifts *inter vivos,* and since the execution of the contracts are not disputed the burden in the instant case is upon the plaintiff.to prove that the contracts were entered into under circumstances tending to vitiate them. * * * In the present case there is no charge in the complaint or proof of fraud, duress, or mistake. * * * Moreover, there is no evidence tending to show that decedent lacked mental capacity to comprehend the nature and significance of the contracts in question. Nor does

plaintiff urge that the contracts are susceptible of different constructions. It is not the province of the court to alter a contract or make a new one for the parties and thus attempt to ignore the one which the parties made for themselves."

In refusing in the instant case to adhere to its previous position, the Appellate Court was impressed by a decision of the court of appeals for the District of Columbia, *Murray* v. *Gadsden,* 197 Fed. 2d 194, which had the effect of limiting a prior decision of that court, *Matthew* v. *Moncrief,* 135 Fed. 2d 645. In the latter case Mr. Justice Vinson stated the issue as follows: "When two persons, whom we shall call the donor and donee-survivor (whether or not their relationship always justified this terminology), *both* sign a deposit card which purports to create a joint account subject to the demands of either, and upon the death of either to the survivor, may the written intention of the parties as expressed in that instrument be altered or destroyed by parol evidence except upon the grounds of fraud or mistake?" After a careful and detailed analysis of some thirty-one cases from other jurisdictions, the court answered the question in the negative. In my opinion, subsequent cases in that jurisdiction, including the *Murray case,* which limit or overrule the *Matthew case,* are at best mere adoptions of an apparent minority view which has never been allowed to prevail in Illinois, either by statute or judicial decision.

There is a reasonable basis for the theory invoked in the Illinois cases (the contract theory) and the rule of contract law applied. For these instruments *are* contracts and have repeatedly been recognized as such. The refusal to admit evidence (whether parol or otherwise) for the purpose of showing an intention contrary to that expressed in a written contract, a rule of substantive contract law, is calculated to prevent the perpetration of fraud and the litigation of groundless claims.

The temptation is often great to go behind the written word with the avowed purpose of finding out what a deceased person "really intended." But, by and large, courts have been extremely reluctant to do so, being fully aware that in the path of an exception designed to meet an immediate situation may come evils of great scope and magnitude. For example, the refusal to admit testimony regarding oral statements of a testator which conflict with the terms of his will is not thought to unwisely restrict judicial inquiry. Nor does the refusal to allow statements of a contracting party to vary the terms of a contract which he has deliberately and knowingly entered into make the law an instrument of injustice or attach undue significance to the written word. The soundness of this policy becomes more evident when account is taken of the difficult task of assessing the abundant parol evidence that would ordinarily be forthcoming when the contracting party is dead.

Finally, even if it be decided that parol evidence may properly be considered, these signed agreements warrant the executor being required to negative by clear and convincing evidence the donative intent expressed therein. Perhaps there is too quick a tendency to categorize this transaction as but another of the cases wherein the depositor does utilize the arrangement solely and exclusively for convenience and in fact does not intend the survivor to have the proceeds remaining. This case cannot so easily be fitted to the somewhat usual form. Viewing the matter retrospectively it does appear Ralston would be paid very well for the services he undertook to perform. But had Schneider lived longer and the money, through repeated withdrawals made by Ralston for Schneider's benefit, dwindled to a mere nominal amount, the appearances of unjust enrichment and violations of so-called equitable rights would have all but vanished. Moreover, the facts disclose that Schneider was Ralston's uncle by marriage, and Schneider always referred to him as his nephew. And

at the time these agreements were signed, Ralston was the closest relative Schneider had in Chicago. True, there is Ralston's statement that he contributed none of the money, and that Schneider asked him to go with him to the bank so that if he became ill Ralston could make withdrawals for him. But there is nothing to negate the fact that Schneider, while remaining cognizant of the convenience of the arrangement, may still have intended Ralston to have the money remaining in the account upon his death just as the instruments provide. Certainly, in view of the signed agreements, the burden should be upon the executor to negate this possibility. Since the executor has not done this, I believe that even under the theory adopted by the majority opinion, (the gift theory,) the evidence adduced is insufficient to overcome the clearly expressed intent of the deceased as to the disposition of this property.

Mr. Justice Klingbiel concurs in the foregoing dissenting opinion.