In re Estate of Augusta P. Kroening, Deceased. Appeal of Eleanor Richards, Appellant, v. Arthur Kroening, Appellee.

Gen. No. 43,337.

8

Opinion filed November 20, 1946. Released for publication December 5, 1946.

WACHOWSKI & SIEMANSKI, of Chicago, for appellant; CASIMIR R. WACHOWSKI, of Chicago, of counsel.

JAMES R. GLASS, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Petitioner, Eleanor Richards, filed an amended petition in the nature of exceptions to an inventory filed by respondent, Arthur Kroening, administrator of the estate of Augusta Kroening, deceased, in the probate court of Cook county praying, *inter alia,* that the administrator be required to list certain assets as property of the estate. On appeal from the probate court the case was tried *de novo* by the court without a jury. By this appeal the petitioner seeks to reverse the order denying the relief prayed for in her amended petition.

The essential facts are uncontroverted. On April 8, 1943 Augusta Kroening, a widow, died intestate at the age of 86 years, leaving her surviving as her only heirs at law and next of kin five children: Henry, Charles, Arthur and Selma Kroening, and Eleanor Richards the petitioner herein.

At the time of her death and for many years prior thereto Augusta Kroening, the deceased, resided in the premises which she owned, known as 4946 South Wood

street, in the City of Chicago, Illinois, with her son Arthur Kroening, the respondent, a bachelor, and her daughter Selma Kroening, a spinster.

Shortly after the funeral of Augusta Kroening the respondent Arthur Kroening, Selma Kroening, Henry Kroening, and the petitioner Eleanor Richards met at the home of the respondent. On this occasion the respondent, in the presence of Henry Kroening, Selma Kroening, and the petitioner, exhibited a dresser drawer in which the deceased had for many years kept legal documents, bank books and cash. The contents of the drawer were examined and the cash monies counted by all present. Part of the money, $1,515.29, was found in a corner of the drawer wrapped in two bundles. The money, including that found in the bundles, aggregated $7,620. Some time later a five dollar gold piece and two fifty cent pieces were also found in the dresser drawer. Among the other items found in the dresser drawer were a joint bank account book issued by the Chicago City Bank and Trust Company in the names of Arthur Kroening and decedent, showing a balance of $2,389.02, and a receipt issued by the receiver of the People's Stock Yards State Bank to Selma Kroening and Augusta Kroening, evidencing a joint account.

The inventory filed in the estate of Augusta Kroening by Arthur Kroening as administrator listed cash in the sum of $5,963.15.

The court found that the balance shown in the joint account between decedent and Arthur Kroening in the Chicago City Bank and Trust Company was the property of Arthur Kroening; that the balance of the account in the defunct People's Stock Yards State Bank and also the sum of $1,515.29 which was wrapped in separate bundles, was the property of Selma Kroening.

At the hearing the sole witness called in behalf of the petitioner was Arthur Kroening, who testified substantially as follows: that in the latter part of September

1933 his mother Augusta Kroening suffered a severe hip injury resulting in her confinement to her home until she died in April 1943; that before her injury she kept her valuables in a dresser drawer in the dining room and handled her own financial affairs; that after the injury the witness collected all of the bank dividends, rents, and other investments except the rentals on some improved real estate located in the City of Glen Ellyn, Illinois; that all the moneys collected were first exhibited to and counted by 'his mother and then placed in the dresser drawer; that the witness furnished part of the money for the household expenses, which was segregated and placed in another drawer to which his sister Selma had access; that for many years before her injury Augusta Kroening had an account in the Chicago City Bank and Trust Company; that some time in October of 1940 the witness obtained signature cards from the bank at the behest of Augusta Kroening which she signed, converting her former individual account to a joint account with her son; that the new joint account book, after being examined by the decedent, was later placed in the dresser drawer.

On cross-examination the witness testified that he had a talk with his sister Selma and his mother with regard to the collection of dividends from the receiver of the People's Stock Yards State Bank, "so my mother told me, when I cashed the checks and brought the money home, to keep Selma's on one side in a corner of the drawer; so I did. There was about $1500, I don't recollect exactly. My mother counted the money. We always went over it together. My mother told me to keep Selma's on the side in a corner of the drawer, which I did. That was the money on the dividends from the account by Augusta Kroening. That is the one she told me to keep on the side. That is the one I didn't put in that inventory."

Petitioner contends that the joint account between Arthur Kroening and decedent with the Chicago City

Bank and Trust Company was established when a confidential relationship existed between Arthur and his mother and was made without the payment of any consideration.

The evidence shows that this joint account was made more than two and a half years before the death of Augusta Kroening; that at the time she read the signature cards before she executed them, and subsequently examined the new bank book showing the joint account with her son Arthur. There is not a scintilla of evidence that respondent has not been faithful and honest in all of his dealings with his mother, nor is there any evidence tending to show that the joint account was obtained by undue influence. So far as the record discloses decedent had full possession of all her mental faculties from the time she received the hip injury until she died.

■ A fiduciary relation must be established by competent evidence and does not obtain between a parent and child as a matter of law. The proof must be clear, convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion. (*Stewart v. Sunagel*, 394 Ill. 209, 214.)

■ Counsel for petitioner says that after respondent brought the new book home, ''he gave the book back to his mother and put it in the drawer. This indicated that she continued to exercise exclusive control of this account.'' Mere retention of the bank book by either respondent or decedent is, in our view, immaterial, since the undisputed testimony shows that the key to the dresser drawer in which the bank book was kept was used by and accessible to both respondent and decedent. Obviously both could not have manual possession of the bank book at the same time. The contract (Petitioner's Ex. 3) between them and the Chicago City Bank and Trust Company provides that all funds deposited to the joint account of the respondent and decedent may be paid to either ''whether the

others be living or not.'' The possession of the bank book by either respondent or decedent was for the benefit of both and not inconsistent with the contract. (*Illinois Trust & Savings Bank v. Van Vlack*, 310 Ill. 185, 191; *In re Estate of Halaska*, 307 Ill. App. 183.)

█ It is next urged by petitioner that the receipt for the ''joint account'' between Selma Kroening and decedent, her mother, issued by the receiver of the defunct People's Stock Yards State Bank, was in the sole control and possession of the decedent at the time of her death. As to this bank account, the record, which we have carefully examined, fails to disclose when or by whom the deposits were made. The contract (Petitioner's Ex. 4) is substantially the same as petitioner's exhibit 3, except that the account reads ''Selma Kroening by Augusta Kroening.'' In his argument petitioner's counsel assumes that this is a joint account between Selma Kroening and decedent and proceeds on the theory that since the receiver's receipt was in the possession and control of decedent at the time of her death the balance in this account should have been inventoried as part of decedent's estate. In either event, whether it was a joint account or the individual account of Selma Kroening, it was not part of decedent's estate, for the reason that possession of the receiver's receipt by the decedent is immaterial on the grounds heretofore stated. Moreover, it appears that the $1,515.29 found wrapped in separate bundles among the cash in the dresser drawer came from dividends paid on this account by the receiver and that it was segregated by the respondent from other moneys at the specific direction of his mother Augusta Kroening who stated at the time that it was Selma's money.

██ Finally petitioner contends that the entire sum of $7,620 which was found in the dresser drawer should have been inventoried. Inasmuch as we hold that the sum of $1,515.29, as was found by the trial court, was not part of the estate of Augusta Kroening,

deceased, and therefore properly omitted from the inventory, we shall consider the remainder, amounting to $6,104.71. The inventory shows cash as $5,963.15, leaving a balance of $141.56 unaccounted for. In respondent's brief (p. 4) he asserts: "The children agreed to pay out of the fund $48.88 real estate taxes on Chicago property and $92.68 on Glen Ellyn property, together with $1,515.29 belonging to Selma left a balance of $5,963.15." Nowhere in the record does such an agreement appear. Therefore the inventory should have shown additional cash in the sum of $141.56.

For the reasons stated, the order denying the relief prayed for in the amended petition is in all respects affirmed except as to the cash shown in the inventory. In this particular the order is reversed and the cause is therefore remanded with directions for further proceedings not inconsistent herewith.

*Affirmed in part, reversed in part and remanded with directions.*

KILEY and BURKE, JJ., concur.