Fausto Cuilini, Executor of Last Will and Testament
of Trina U. Jamieson, Deceased, Appellee, v.
Northern Trust Company et al., Defendants.
Appeal of Raymond J. Kelly, Appellant.

Gen. No. 44,322.

Opinion filed June 23, 1948. Rehearing denied July 9, 1948. Released for publication July 12, 1948.

WILLIAM GILLESPIE, of Chicago, for appellant.

CASSELS, POTTER & BENTLEY, of Chicago, for appellee; RICHARD H. MERRICK and JOHN D. DEFEO, both of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Fausto Cuilini, hereinafter called plaintiff, as executor of the last will and testament of Trina U. Jamieson, deceased, filed a complaint to determine the ownership of two joint bank accounts in the names of the deceased and defendant Raymond J. Kelly. Issues were joined. Pursuant to an order of court, defendant banks, The Northern Trust Company and Chicago City Bank and Trust Company, deposited the amounts in the accounts in controversy with the clerk of the circuit court, and were thereupon dismissed out of the case. Defendant's motion for a finding and judgment in his favor at the close of proofs was denied. Upon hearing, the chancellor decreed that the funds on deposit with the clerk of the court are the sole property of plaintiff as executor. Defendant Raymond J. Kelly appeals.

May 18, 1945, defendant Kelly accompanied Trina U. Jamieson at her request to The Northern Trust Company, located at 50 South La Salle street, Chicago, Illinois, where she deposited $2,876.38 of her own funds in a joint savings account with defendant. Both parties executed a contract which reads as follows: "The undersigned hereby agree to be bound by all the rules of The Northern Trust Company governing savings deposits contained in its bank book issued to us and also hereby agree each with the other and The Northern Trust Company that all sums howsoever deposited in this account, are and shall be owned by them jointly, and be subjected to the withdrawal or order of any or either of them or the survivor of them and each of the undersigned is hereby appointed the attorney for the other or others of the undersigned to indorse any check, draft, note or other instrument payable to the order of the other or others of the undersigned for deposit in this account."

On the same day defendant Kelly accompanied Trina U. Jamieson to the Chicago City Bank and Trust Company. She there deposited her own funds amounting to $2,095.55 in a joint account with defendant. At this bank both parties also executed a contract which reads as follows: "Joint tenancy (Pay to either or survivor). The undersigned hereby agree that all funds now or hereafter deposited to the credit of their joint account with the Chicago City Bank and Trust Co., or any part thereof, and any interest thereon, may be paid to any one of the undersigned, whether the others be living or not. It is further agreed that the bank may charge to this account any check, draft, or other order signed by any of us, or dishonored paper endorsed by any of us. Any of us may endorse and deposit in this account any instrument payable to any of the others of us, and transact any other business on this account."

The gist of the complaint is that at the time of the creation of the joint accounts here in question decedent was incapacitated because of her advanced age and failing health from personally attending to her affairs; that defendant agreed to act as her agent in withdrawing funds from the accounts; and that decedent did not give or assign any part of the funds in the joint accounts to defendant.

The basic question presented is whether in the absence of fraud, duress, or mistake, parol evidence is competent to alter or modify the deposit contracts. Plaintiff says that the evidence shows there was no intent to create any interest in defendant and that decedent's only purpose in executing the contracts was to permit defendant to withdraw money as her agent. Plaintiff's case rests solely on the testimony of defendant who was called as an adverse witness.

The evidence shows that Mrs. Jamieson died on October 9, 1946 and that her husband had died two years before; that during their lifetime the Jamiesons had resided for many years in their home at 3931 West 60th street in the City of Chicago and were neighbors of the defendant; that the Jamiesons had no children and regarded defendant and his sister Mrs. Duane E. Clisbee as their children, and the Kellys in turn called the Jamiesons' home their second home; that decedent knew defendant since he was five or six years of age and ever since defendant was a boy he performed errands for her; and that he put up the screens, fixed the sewer and did some painting and repair work in and about the Jamieson premises, for which he was not compensated.

The evidence further shows that prior to the opening of the joint accounts here in controversy the decedent had joint accounts with defendant's brother-in-law, Duane E. Clisbee. Shortly after Clisbee and his family had moved a considerable distance away from

the neighborhood of decedent she closed the joint accounts with Clisbee and opened the accounts with the defendant; that after the joint accounts with defendant were established no money was ever withdrawn from the Northern Trust Company account; that four withdrawals, aggregating $500 were made by defendant at the direction of the decedent from the account at the Chicago City Bank and Trust Company; that no deposits were made by decedent or defendant in either account after the agreements were signed on May 18, 1945; and that after the joint accounts were opened decedent retained possession of the bank books except when the foregoing withdrawals were made. At the time the agreements were executed the decedent was seventy-five years of age and the defendant was twenty-nine years of age.

The contracts executed by the decedent and defendant state in clear and unequivocal language that the deposits are the joint property of decedent and defendant and that upon the death of either they shall go to the survivor. The rule has been repeatedly announced that, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties. (*Domeyer v. O'Connell,* 364 Ill. 467; *Green v. Ashland Sixty-Third State Bank,* 346 Ill. 174; *Englestein v. Mintz,* 345 Ill. 48.) Evidence of words or acts of the parties inconsistent with the plain terms of the contract is not competent, nor is the exclusive possession and control of the bank books decisive of the question of intent. (*Illinois Trust & Savings Bank v. Van Vlack,* 310 Ill. 185; *Reder v. Reder,* 312 Ill. 209; *In re Estate of Kroening,* 330 Ill. App. 7; *In re Estate of Halaska,* 307 Ill. App. 183.)

Defendant's rights in the joint accounts are created by the contracts and not by rules controlling joint tenancies or gifts *inter vivos,* and since the execution of the contracts is not disputed the burden in

the instant case is upon the plaintiff to prove that the contracts were entered into under circumstances tending to vitiate them. (*In re Estate of McIlrath,* 276 Ill. App. 408.)

To support his position plaintiff relies on *Estate of Williams v. Tuch,* 313 Ill. App. 230. There the decedent was eighty-one years of age and gravely ill at a hospital at the time the donee survivor Tuch induced the decedent to execute the joint tenancy agreement. The court held that the evidence showed that a confidential relationship existed between the parties; that decedent was completely under the domination of Tuch; and that the decedent undoubtedly had no conception of what she signed.

In the present case there is no charge in the complaint or proof of fraud, duress, or mistake. After hearing the evidence the chancellor stated, ''This man Kelly (defendant) did not over-reach the old lady; he was her friend.'' Moreover, there is no evidence tending to show that decedent lacked mental capacity to comprehend the nature and significance of the contracts in question. Nor does plaintiff urge that the contracts are susceptible of different constructions. It is not the province of the court to alter a contract or make a new one for the parties and thus attempt to ignore one which the parties made for themselves.

Plaintiff cites cases in foreign jurisdictions. In *Matthews v. Moncrief,* 135 F. (2d) 645, Chief Justice VINSON of the United States Supreme Court, while Associate Justice of the United States Court of Appeals for the District of Columbia, made an exhaustive review of these conflicting decisions. We think the decisions of the Supreme Court of Illinois heretofore cited are in line with the weight of authority which holds that, in the absence of fraud, duress, or mistake, intention of the decedent is to be deduced only from the terms of the contract. We are, therefore, impelled to hold that the chancellor erred in denying

defendant's motion at the close of the evidence for a finding and judgment in his favor. In the view which we take of this case it is unnecessary to consider plaintiff's cross errors.

For the reasons assigned, the decree is reversed, and the cause is remanded with directions to enter a decree finding that the funds here in controversy, now in the hands of the clerk of the circuit court are the property of the defendant.

*Judgment reversed and the cause remanded with directions.*

BURKE, P. J., and KILEY, J., concur.