In the Matter of the Estate of Henry W. Fitterer, Deceased.
Ellen Konrad and Dorothy Cermak, Petitioners-Appellants, v. Edith C. Fitterer, Respondent-Appellee.

Gen. No. 47,958.

First District, Second Division.

October 4, 1960.

Rehearing denied November 1, 1960.

Walter Soroka, of Chicago, for appellants.

Ernest Kentwortz, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Ellen Konrad and Dorothy Cermak, petitioners, appeal from an order of the Probate Court dismissing their petition for citation to require the inventory of monies in four bank accounts involved in the estate of Henry W. Fitterer, deceased.

Fitterer died intestate. Letters of administration issued to his surviving spouse, Edith Fitterer, the respondent herein, who filed an inventory showing the various assets of his estate; inadvertently she failed to include certain chattels—a diamond stickpin, two watches, and luggage—which were subsequently inventoried. She omitted from the inventory the proceeds of four bank accounts which she claimed as her own by right of survivorship and which constitute the sole issue in dispute.

Fitterer had married Edith Fitterer in July 1955, about eight months after the death of his first wife, Lillian Fitterer, to whom he had been married forty-three years. Two children were born of that marriage, Ellen Konrad and Dorothy Cermak, both of whom were married at the time of the instant proceeding in the Probate Court. No children were born of Fitterer's second marriage, nor were any adopted.

During his first marriage, Henry and Lillian Fitterer purchased a home in joint tenancy, and accumulated

bonds, jewelry, and other personal property which are not here involved. Fitterer had been employed by the Royal Metal Manufacturing Company for thirty-two years, and during his final three years he had served as a vice president. The company established a trust in his favor, in which the balance on hand at the time of his demise was $22,727.40. By an instrument dated January 24, 1958, some six months before his death, he directed that this trust be distributed in the proportion of one-half to respondent and one-fourth to each of the petitioners; this distribution has been effected. He also left a life insurance policy in the sum of $1000.00 in which his wife, the respondent, was named as beneficiary; there was no other insurance.

In 1952 and 1953 decedent opened two savings accounts with the Oak Lawn Federal Savings and Loan Association in his own name and that of his first wife, Lillian, jointly with right of survivorship. Shortly after Fitterer's marriage to respondent, she accompanied him to the Savings and Loan Association where, at his request, the two accounts were made joint with right of survivorship in him and respondent. This change was effected at the bank by deleting the name and signature of the deceased spouse on both accounts, substituting the name of respondent for that of decedent's first wife, and having respondent sign the joint tenancy agreements for both accounts on which the signature of her husband already appeared. The joint tenancy agreements were the same instruments by which the two accounts were originally created. An officer of the bank testified that while he had not handled the change in the account names and had no independent recollection of Fitterer's presence in the bank when the change was effected, it was banking practice, always adhered to, to require that all parties represented on a joint account be present when the account was set up; he added that in one case with which he was familiar, in order to have all the neces-

sary parties present, the requisite signatures had been affixed at a hospital in the presence of a bank officer. At the time the joint Fitterer accounts were closed out, within two weeks following Fitterer's death, one account carried a balance of $10,561.65, the other, $10,-163.84.

About six months after the marriage of Henry and Edith Fitterer, a third savings account was established —this one at the Oak Lawn Trust and Savings Bank, where both Fitterer and his second wife signed an agreement providing for joint ownership with right of survivorship, similar in all respects to the agreement for joint ownership at the Federal Savings and Loan Association. No previous savings account in Fitterer's name existed in the Oak Lawn Bank. It was stipulated that the amount withdrawn from this savings account on July 31, 1958 was $9,060.40. Fitterer had opened a checking account in that bank in November of 1951 in his own name; in October of 1957 it was changed to a joint account with right of survivorship in him and respondent by means of an agreement which they both signed at the bank. It was stipulated that the amount in the checking account was $4,144.03 at the time it was closed on August 7, 1958.

Up to a year before his death in July of 1958 Fitterer appeared to be in good health; he did not become bedridden until two weeks prior to his demise. He died of cancer but was not aware of the nature of his illness; he expected to recover. Title to Fitterer's home was not changed because he and respondent planned to sell and move West. On the hearing in the Probate Court, the judge ordered that certain chattels be included as assets of the estate, but the petition for citation to include the four bank accounts as assets of the estate was dismissed for want of equity.

Use of the two-party bank account as a means of effectuating a form of gift, with control over the subject matter and the power of revocation reserved by

267

the donor, and with the donee's enjoyment of the gift postponed until the donor's death, dates back more than a century. Since the reservation of dominion over the gift res by the donor runs counter to a long established rule that delivery of the chose to the donee, or one acting in his behalf, is an essential element of every gift, and because postponement of the gift until the donor's death makes the transaction testamentary in character and conceivably subject to the statute of wills, courts in various jurisdictions have been beset with the difficulty of giving effect to joint bank accounts with right of survivorship and of fitting them into a workable legal pattern; three or four theories, with varying results, have been advanced by the courts to give legal effect to joint accounts and the corresponding rights of the parties. The contract and the gift theories are the most commonly adopted.

With banking persistence, aided by legislation, these accounts have generally been accepted, in one form or another, in judicial circles. This is evidenced by the fact that, in cases arising from 1953 through 1958, courts of appeal in twenty-three states have awarded the balance credited to a joint and surviving bank account to the survivor upon the death of the depositor. Those recent cases which have denied the survivor the right to the balance have done so primarily because of a failure in meeting the technical requirements of a joint account statute rather than upon any conceptual difficulty with the perfection of the gift. (For an exhaustive discussion of the subject see Kepner, Five More Years of the Joint Bank Account Muddle, 26 U. Chi. L. Rev. 376 (1959); 1959 U. Ill. L. F. No. 4 (this issue features Problems of Joint Ownership); and, under Comments, The Joint and Survivorship Bank Account, 1957 U. Ill. L. F. 655.)

In re Estate of Schneider, 6 Ill.2d 180, 127 N.E.2d 445, the most recent expression of the Supreme Court, holds that the interest of the survivor of a joint ac-

268

count in a savings and loan account is not based on any theory of joint tenancy but depends on the donative intent of the depositor. Until recently the reviewing courts of Illinois had applied the contract theory to determine the rights of parties who had signed an agreement creating a joint account with right of survivorship; see In re Estate of Wilson, 404 Ill. 207, 88 N.E.2d 662; Illinois Trust & Sav. Bank v. VanVlack, 310 Ill. 185, 141 N. E. 546; Cuilini v. Northern Trust Co., 335 Ill. App. 86, 80 N.E.2d 275, and In re Estate of McIlrath, 276 Ill. App 408; and note the dissenting opinion filed in the Schneider case in the Supreme Court.

The Schneider case was taken by the Supreme Court on leave to appeal from this court primarily because of a conflict in decisions of the Appellate Courts with respect to this problem; see Cuilini v. Northern Trust Co., 335 Ill. App. 86, 80 N.E.2d 275, and Johnson v. Mueller, 346 Ill. App. 199, 104 N.E.2d 651. In the Cuilini case title to joint bank deposits was held to vest in the surviving depositor. Relying on decisions of Illinois courts of review and the Federal case of Matthew v. Moncrief, 135 F.2d 645 (D.C. Cir.) (containing an exhaustive review of conflicting decisions), the court here felt impelled to hold that, in the absence of fraud, duress, or mistake, intention of the decedent is to be deduced only from the terms of the contract. Evidence in the Cuilini case indicated an intent on the part of the parties contrary to the terms of the contract, but the court held that parol evidence could not be introduced to vary the terms of the contract. Conversely, in the Johnson case, the court based its decision with respect to joint bank certificates on the donative intent of the deceased and held that parol evidence was admissible to determine such intent. In the Schneider case the court was required to determine whether the balance in two joint bank accounts should go to the survivor donee named on both accounts or to

the estate of the deceased donor. The accounts were set up in the usual form and provided for right of survivorship. The Appellate Court, in In re Estate of Schneider, 2 Ill.App.2d 560, 120 N.E.2d 353, referred to its Cuilini decision and its reliance there on the Matthew case decided in the Court of Appeals, but in the Schneider case adopted the reasoning of the later Federal case of Murray v. Gadsden, 197 F.2d 194 (D.C. Cir.); the Murray case was almost identical to the Matthew case on the facts, but in the Murray case the court refused to adhere to the doctrine announced in its Matthew decision, holding in effect that the parol-evidence rule does not forbid inquiry into the object of the parties in executing and receiving a written instrument, and concluded that should a variance be found between the true agreement and its written expression, the court may reform the writing to cause it to express the actual intention of the parties. The Appellate Court in the Schneider case, on the authority of the Murray case, held that parol evidence was admissible to determine the intention of the parties signing the joint bank account agreements. There was no contention that the claiming donee had contributed any part of the funds in the joint accounts, nor did he claim them as a gift. The Appellate Court concluded that the uncontroverted evidence showed that the joint account agreements were made only for the convenience of the deceased, and ordered that the funds remaining in the accounts be inventoried as assets of Schneider's estate. In affirming the Appellate Court, the Supreme Court appears to have repudiated the contract theory formerly allowed in the joint bank account cases; it will allow the proceeds to pass to the surviving donee only if the depositor opened the joint account with a donative intent; and it holds that parol evidence is admissible to rebut such donative intent. The Supreme Court observed that in order to establish a gift the proof must be clear and convincing, and that

270

the burden is upon the alleged donee to establish the existence of a donative intent. "The decisions of this court relied on by appellant," it explained, "go no further than to indicate that the deposit agreement tends to show a donative intent on the part of the original owner of the funds, and that the intention so manifested, in the absence of contrary evidence, is sufficient to establish ownership in the survivor by virtue of the contract upon the death of the original owner. The form of the agreement, however, is not conclusive as to the intention of the depositors between themselves." We take this to mean that the deposit agreement is presumptive evidence of a donative intent which may be rebutted by oral evidence.

■ The Schneider case is a reflection of the disfavor with which both the Legislature and the courts in Illinois view the right of survivorship in personal property. Even before the courts of review here rejected the contract theory as applicable to joint bank accounts, the Supreme Court, in Doubler v. Doubler, 412 Ill. 597, 107 N.E.2d 789, pointed out that section 2 of the Joint Rights and Obligations Act (Ill. Rev. Stat. 1959, ch. 76) unequivocally abolished rights of survivorship except as to executors and trustees or where an instrument in writing expressed an intention to create such rights, and the court stated that provisos in a statute, being designed to qualify or limit what is affirmed in the body of the act, should be strictly construed.

In the instant proceeding all the parties testified that their relationship with each other and with decedent had been on a friendly basis up to the time of decedent's death. Following his second marriage, petitioners, with their husbands, had visited at the Fitterer home, and during decedent's illness had assumed the responsibility of driving him to the doctor's office and to the hospital. Both petitioners and Rudolph Konrad, Ellen Konrad's husband, testified that decedent had

271

told them they "would be well taken care of." Some six months before decedent's death he had directed that the trust established by the company in his favor be distributed one-half to respondent and one-fourth to each of the petitioners; it seems logical to assume that he regarded such a distribution as an acquittal of his generalized promise.

Following the death of his first wife, Fitterer became the sole owner of the funds in the two accounts in the Federal Savings and Loan Association, and he could have provided for the disposition of the proceeds upon his death by will, trust, or otherwise; shortly after his second marriage, however, he had the accounts made joint, with right of survivorship in either himself or his second wife. About six months after his marriage to respondent, he opened a savings account at the Oak Lawn Trust and Savings Bank, and had it set up as a joint account with right of survivorship in either party. There is no evidence whatsoever to indicate that these accounts were established for purposes of convenience; indeed, the record does not indicate that there were any substantial withdrawals from the accounts after they were established. There is no convincing evidence to rebut the presumption of the deceased's intent to make gifts of the proceeds of these three savings accounts.

With respect to the checking account, petitioners argue that this was made joint to enable respondent to draw checks to pay medical and other expenses. There is no specific evidence of such a limited intent. In October of 1957, some nine months prior to Fitterer's death, the checking account was made joint. He was ill at the time, but although he expected to recover, it is reasonable to assume that, as a businessman, he wanted his affairs in order; it is also fair to infer that, as a layman, he relied on the joint-survivorship language to give to respondent any balance there might

remain in the checking account after payment of current expenses. The life insurance policy, in which respondent was named as beneficiary, is a further indication that his paramount desire was to take care of his second wife.

■ ■ We have reached the conclusion that the evidence supports Fitterer's donative intent to make a gift of the proceeds of these four accounts to respondent, and since there is no convincing evidence to the contrary, the judgment of the Probate Court is affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.