Leona Frey and Rosanna Dietmeier, Plaintiffs-Appellants, v. Martha Wubbena and Herman Greenfield, Executor of the Estate of Herman E. Wubbena, Deceased, Defendants-Appellees.
Martha Wubbena, Appellee, v. Leona Frey and Rosanna Dietmeier, Appellants.

Gen. No. 11,459.

Second District, First Division.

October 31, 1961.

Charles S. Thomas, of Rockford, and Martin V. Peterman, of Oregon, for appellant.

Eaton & Leemon, of Mt. Carroll, Fearer & Nye, and Jacobs Block, of Oregon, for appellee.

DOVE, J.

On August 31, 1957 Herman E. Wubbena, 60 years of age, died testate leaving him surviving his widow, Martha Wubbena, and his two daughters, by a previous marriage, Leona Frey and Rosanna Dietmeier, his sole and only heirs at law. At the time of his death he was the owner of 160 acres of land in Carroll County and a substantial amount of personal property. His will was duly admitted to probate but his widow, within six weeks after her husband's death, filed her renunciation and election to take under the statute.

On October 13, 1958 the daughters, Leona Frey and Rosanna Dietmeier, filed, in the circuit court of Carroll County, their complaint for partition making their step-mother and the executor of their father's will defendants. Martha Wubbena answered admitting the allegations of the complaint for partition and filed her counterclaim.

Attached to the counterclaim and made a part thereof, was a list of securities and investments which the counterclaim alleged Herman E. Wubbena acquired without the knowledge of his wife, or daughters, also a list of deposits which he made in various financial institutions, all in his name and the name of his

daughters. It was alleged that the moneys used to make all the deposits and investments were the separate assets of Herman E. Wubbena; that at all times during his lifetime, decedent exercised full, complete and sole control over said investments, securities and deposits and also over the safety-deposit bank boxes in which they were held for safe-keeping. It was further alleged that upon the death of Herman E. Wubbena all these securities and deposits came into the possession and control of the executor of the will of said decedent. The counterclaim prayed, that the court decree all such deposits and securities to be a part of the Estate of Herman E. Wubbena and averred that they should be distributed by the executor according to the provisions of the last will of decedent and according to the intestate laws of this state. Replies to the counterclaim were filed and the issues made by the pleadings were submitted to the chancellor for determination. At the conclusion of the hearing a decree was rendered in favor of the counterclaimant, Martha Wubbena, the widow of Herman E. Wubbena, deceased, and the daughters of decedent appeal.

At the hearing it was stipulated that an amicable public sale of the land would be had on or before June 30, 1960 and only the issues made by the counterclaim and reply should be determined by the chancellor. The parties also stipulated that at the death of Herman E. Wubbena he was possessed of joint savings accounts in Livestock National Bank of Chicago, Federal Savings and Loan Association, First National Bank of Freeport, State Bank of Freeport, American Savings and Loan Association and State Bank of Shannon; that he was also possessed of a joint checking account in Forreston State Bank of Forreston and also held three promissory notes, one signed by Harvey Wubbena, one signed by Cornelius and Ethel Hayenga and the third by Harley and Ardis Motter.

It was further stipulated that at the time of the death of Herman E. Wubbena he had safety deposit boxes in the State Bank of Shannon, Illinois and in the State Bank of Freeport, Illinois under registration with his daughters, Leona Frey and Rosanna Dietmeier; that in the safety deposit box in the State Bank of Shannon was a certificate of deposit dated March 13, 1957 payable to Herman E. Wubbena for $1,000; another certificate of deposit dated January 2, 1957 payable to Herman E. Wubbena and/or Leona Frey and/or Rosanna Dietmeier for $10,000; a note dated July 20, 1955 payable to Leona Frey and Rosanna Dietmeier executed by Lillian G. and Helen M. Spratler upon which interest had been paid to July 20, 1957 and upon which there was a balance due of $1750; a note dated May 12, 1956 due May 12, 1957 with 4% interest, executed by Orin L. Barton and payable to Herman E. Wubbena; two certificates dated February 16, 1953 issued by the First State Bank of Shannon, one evidencing that Herman E. Wubbena and Leona Frey as joint tenants with right of survivorship and not as tenants in common were the owners of 40 shares of the capital stock of the First State Bank of Shannon and the other certificate evidencing that Herman E. Wubbena and Rosanna Dietmeier were the owners of 40 shares of the capital stock of said bank as joint tenants with right of survivorship and not as tenants in common; a savings account book issued by the First State Bank of Shannon to Herman E. Wubbena and/or Leona Frey and Rosanna Dietmeier showing a $300 balance and a checking account book issued by the said First State Bank of Shannon to Herman E. Wubbena and/or Leona Frey and Rosanna Dietmeier indicating a balance of $136.40. In this safety deposit box in the Bank of Shannon were also fourteen United States Bonds issued to Herman E. Wubbena, upon three of these bonds the name of Herman E. Wubbena

377

appeared followed by the words and letters, "P. O. D. Leona Frey." Upon another, following the name, Herman E. Wubbena were the letters and name, "P. O. D. Rosanna Dietmeier." Two bonds were payable to Herman E. Wubbena or Leona Wubbena, two were payable to Herman E. Wubbena or Rosanna Wubbena and the remaining six were payable to Herman E. Wubbena. Of these remaining bonds two were "E" Bonds, two were "G" Bonds and the others were "E" Bonds.

It was further stipulated that at the time of the death of the said Herman E. Wubbena there were, in the Safety Deposit Box at the State Bank of Freeport, the following documents, viz: a savings account passbook issued to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier by the Ogle County National Bank indicating a credit of $309.86; a savings account passbook issued by the American Savings and Loan Association in the name of Herman E. Wubbena, Leona Frey and Rosanna Dietmeier with right of survivorship, indicating a balance of $6956.34; one note for $3475 signed by Harvey Wubbena, dated March 1, 1956, due one year after date bearing 3% interest and payable to Herman E. Wubbena, Leona Frey or Rosanna Dietmeier jointly or survivor; one note for $400 signed by Harley L. and Ardis M. Motter, dated July 31, 1953 bearing 3% interest and payable to Herman E. Wubbena and Leona Frey and Rosanna Dietmeier jointly or survivor; one note dated January 1, 1953 for $7000 signed by Cornelius F. and Ethel Hayenga payable to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier jointly or survivor; two savings passbooks issued by the Home Federal Savings and Loan Association of Chicago, one issued in the name of Herman E. Wubbena, Leona Frey and Rosanna Dietmeier with right of survivorship indicating a credit of $3045.31, the other issued in the name of Herman

E. Wubbena, Leona Frey and Rosanna Dietmeier jointly with right of survivorship indicating a balance of $3224.22; certificate #78, issued by the North West Company indicating that Herman E. Wubbena and Rosanna R. Wubbena with right of survivorship, are the owners of 5 shares of the common stock of that company; certificate #419, issued by the Ogle Service Company indicating that Herman E. Wubbena and Leona Frey with right of survivorship, are the owners of 40 shares of the stock in that company; certificate C–6784, issued by National Terminals Corporation indicating that Herman E. Wubbena and Leona Frey with right of survivorship, are the owners of 100 shares of stock in that company; certificate CO–44581, issued by Central Illinois Electric and Gas Company, indicating that Herman E. Wubbena and Rosanna Dietmeier with right of survivorship, are the owners of 50 shares of the capital stock of this company; certificate #P–0573, indicating that Herman E. Wubbena and Rosanna R. Dietmeier are the owners of 5 shares of the preferred stock of General Steel Castings Company; certificate NYO–54249 issued by the American Natural Gas Company, indicating that Herman E. Wubbena and Rosanna R. Dietmeier with right of survivorship, are the owners of 60 shares of the common stock of that company; a savings passbook issued by the Livestock National Bank of Chicago to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier, jointly with right of survivorship, indicating a balance of $3249.73; a savings passbook issued by the First National Bank of Freeport, indicating a credit of $3965.69 to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier, jointly with right of survivorship and also a savings passbook issued by the State Bank of Freeport to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier, jointly with right of survivorship, in the amount of $3526.-06.

It was further stipulated that Herman E. Wubbena had exclusive possession and control of the keys to the Safety Deposit Box in the State Bank of Shannon and that neither Leona Frey or Rosanna Dietmeier ever exercised any control over or had access to that safety deposit box. As to the safety deposit box in the State Bank of Freeport it was stipulated that Rosanna Dietmeier had in her possession the keys to that safety deposit box; that she did not, during the lifetime of her father, ever exercise any control of this bank box or any of the securities therein; that she never made any entrance into the safety deposit boxes during the lifetime of Herman E. Wubbena and that she knew nothing about the contents of the boxes and that Herman E. Wubbena retained the ability to obtain access to the safety deposit box in the State Bank of Freeport.

It was further stipulated that neither Leona Frey or Rosanna Dietmeier ever made any deposits or withdrawals from any bank accounts carried in the name of them or either of them with the said Herman E. Wubbena. It was further stipulated that neither daughter ever contributed anything toward the purchase price of any of the securities or knew of their existence until after the death of their father; that said bank accounts were initiated by Herman E. Wubbena and that all deposits in all accounts were the sole and separate moneys of Herman E. Wubbena; that all signature cards in connection therewith were signed by the daughters at the request of their father without any knowledge, by the daughters, as to the amount of such accounts. It was further stipulated that Herman E. Wubbena and his wife, for the calendar years 1952 through 1956, made joint income tax returns and that Herman E. Wubbena never filed any gift tax return or paid any gift taxes to the United States. It was further stipulated that Herman E. Wubbena carried

380

life insurance for the benefit of his daughters in substantial amounts.

The record shows that the Harper Elevator Company was a partnership, that Herman Wubbena was secretary-treasurer thereof and he, as such officer on November 30, 1955 executed a certificate or receipt in the sum of $2,500 which recited, "for 25/100 interest in the Harper Elevator Company to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier, jointly or either survivor"; that on December 15, 1944, he had issued a similar receipt or certificate and the only difference in the two instruments was that the 1944 certificate was issued to Herman E. Wubbena, Leona Wubbena and Rosanna Wubbena while the 1955 certificate was issued to Herman E. Wubbena, Leona Frey and Rosanna Dietmeier. Harry M. Fager testified upon the hearing that at the time these certificates were issued, he, Fager, was manager of the Elevator Company, and that Herman E. Wubbena told him he, Wubbena, "was fixing it so the girls would get it." The daughters never had possession of these receipts or certificates and never knew of their existence until after their father's death.

F. L. Wittenmeyer testified that he was Secretary-Treasurer of the American Savings and Loan Association; that in 1947 when decedent opened his account in that association he talked to decedent who wanted to know something about a joint tenancy account and stated that his wish was that his two daughters go on the account with him as joint tenants and that the proceeds would be paid to his survivors; that the passbook was delivered to decedent who always had it and nobody else ever used it; that he usually left the interest in the account to accumulate and if there were any withdrawals he made them.

Cornelius Hayenga testified that he had known decedent all his life and had had various business trans-

actions with him; that on January 1, 1953 decedent prepared a note for $1000 due one year from date; that witness signed the note and paid the interest to decedent who told him, in a conversation at the time the note was executed in 1953, that if anything happened to decedent, he wanted the money to go to his daughters. The record further discloses that the several transactions in connection with all the promissory notes were conducted by decedent; that it was his money that was loaned and it was to him that interest was paid.

The decree found that the several savings and checking accounts, promissory notes and certificates of stock were the property of the estate of Herman E. Wubbena and not the property of Leona Frey or Rosanna Dietmeier. The decree directed the counterdefendants to assign and transfer to the executor of the will of Herman E. Wubbena the several described securities and assets listed in either or both of their names. The decree also found that certain described government bonds were the property of Rosanna Dietmeier and Leona Frey and directed the executor to deliver these bonds to these counterdefendants.

Counsel for appellants insist that title to the checking and savings accounts in the banks and loan associations, and title to the several promissory notes and to the other securities became vested in appellants as joint tenants with their father at the time the joint accounts were opened, at the time the several notes were executed and at the time the other securities were issued by the several corporations and partnership in the joint names of decedent and his daughters. Counsel state that lack of knowledge by appellants of the amounts of money deposited in the several joint tenancy accounts and lack of knowledge of the securities and contents of the bank deposit boxes is immaterial; that upon the death of Herman E. Wubbena,

382

his daughters became entitled to the possession of these securities not because they were contained in these bank deposit boxes, rented under a joint tenancy agreement, but by operation of law, they having survived their father.

█ Appellants recognize that in order to have a valid gift inter vivos there must be a donative intent upon the part of the donor to make a present gift and also an actual or symbolical delivery of the subject of the gift. And counsel argue that this donative intent is evidenced (1) by decedent signing and procuring the execution of signature cards by appellants indicating joint checking and savings accounts; (2) by decedent making the Spratler note payable to his daughters and the other notes payable to himself and his daughters "jointly or survivor"; (3) by decedent causing the several certificates evidencing the ownership of shares of stock or an interest in the Elevator Company, to be issued to himself and daughters as joint tenants; (4) by registering the bank safety boxes in the names of himself and daughters, and (5) by delivering to one of his daughters the keys to one of these bank boxes.

In support of this contention counsel cite, In re Estate of Deskovic, 21 Ill App2d 209, 157 NE2d 769; In re Estate of Fitterer, 27 Ill App2d 267, 169 NE2d 578; Levites v. Levites, 27 Ill App2d 274, 169 NE2d 574; In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445 and In re Estate of Wilson, 404 Ill2d 207, 88 NE2d 662.

The Deskovic case, supra, was a citation proceeding to recover funds of a bank account which Stanley and Maria Bandera claimed as survivors under a joint tenancy agreement. It appeared that Domenick Deskovic had $12,895.35 on deposit in a Chicago bank. On March 15, 1956, he opened a new account in the same bank in the name of himself and the Banderas' and transferred his deposit to this new account. At

383

that time Domenick Deskovic, Stanley and Maria Bandera signed the following instrument: "All money now or hereafter deposited in this account, and interest, shall be credited in our names; and, subject to the by-laws, rules and regulations of the bank, may be paid, from time to time, to us or any of us, whether the others be living or not. All such moneys shall belong to us in joint tenancy, with the right of survivorship." The court referred to the Joint Rights and Obligations Act (Ill Rev Stats 1955, c 76, §§ 2, 2(a)) and held that this instrument created a joint tenancy in the bank account with the right of survivorship.

In re Estate of Fitterer, 27 Ill App2d 264, 169 NE2d 578, was a petition filed in the Probate Court of Cook County to require Edith Fitterer, widow of decedent and administrator of his estate, to inventory moneys in four bank accounts which she claimed as her own by right of survivorship. The probate court dismissed the petition and the Appellate Court affirmed. The record disclosed that in 1952 or 1953 decedent opened two savings accounts with the Oak Lawn Federal Savings and Loan Association in the name of himself and wife, Lillian, jointly with right of survivorship. His wife died and he remarried. Shortly after his second marriage he and his wife, Edith, went to the office of the Loan Association and at his request the two accounts were made joint with right of survivorship in him and Edith Fitterer, his wife. This was effected at the Loan Association office by deleting the name and signature of the deceased spouse and substituting the name of Edith Fitterer for that of decedent's first wife and by having Edith sign the joint tenancy agreements on which the signature of her husband had been previously affixed.

It also appeared that about six months after decedent married the second time, a third savings account was established at the Oak Lawn Trust and Savings

384

Bank where decedent and his wife also signed an agreement providing for joint ownership with right of survivorship. In October 1957 decedent changed a checking account which he had at the Oak Lawn Trust and Savings Bank to a joint account with right of survivorship in him and his wife, Edith, both executing at the bank, an agreement to that effect. In the course of its opinion the Appellate Court cited and referred to In re Estate of Schneider, 2 Ill App2d 560, 120 NE2d 353, stating that the Schneider case held that the interest of the survivor of a joint account is not based on any theory of joint tenancy but depends upon the donative intent of the depositor and that the proceeds of a joint bank account will only pass to the surviving donee if the depositor opened the joint account with a donative intent. The court then went on to say that the Schneider case reflected the disfavor with which both the legislature and the Courts in Illinois view the rights of survivorship in personal property but held that there was no evidence in the Fitterer case to indicate that the several accounts were established for the purpose of convenience nor was there any convincing evidence to rebut the presumption of the deceased's intent to make gifts of the proceeds of the accounts.

In Levites v. Levites, 27 Ill App2d 274, 169 NE2d 574 it appeared that Samuel Levites invested about $17,000 in Series E United States Savings Bonds payable to himself, his children, grandchildren and great-grandchildren in this manner: "Samuel Levites or Ida Rosen." All the bonds were similarly issued. He redeemed $1100 and used the proceeds for his personal purposes. He had exclusive possession of all the remaining bonds until his death. His widow filed an equitable proceeding seeking an accounting from the alternative payees of the bonds. The chancellor allowed defendants' motion for judgment on the plead-

ings and dismissed the amended complaint and the Appellate Court affirmed. In doing so the Appellate Court said that the chancellor relied upon Section 315–45(C) of the Federal regulations and upon Section 2(d) of the act in relation to Joint Rights and Obligations (Ill Rev Stats 1959, c 76, par 2). The court then referred to the sweeping effect of the regulations and stated that they and the provisions of the Statute conferred absolute title to the bonds to the surviving co-owners or death beneficiaries.

In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445 a petition was filed in the Probate Court of Cook County alleging that the money in two joint savings accounts in the North West Federal Savings and Loan Association belonged to the Estate of Edward Schneider and not to William M. Ralston. The probate court dismissed the petition. Upon appeal, Ralston was called as an adverse witness and testified that all the money in the accounts was deposited by Schneider and none by Ralston; that Schneider at no time told Ralston that he wanted Ralston to have any of the money in the accounts and when Schneider and Ralston went to the bank on May 10, 1952 Schneider said to him, "I want your name on these bank accounts so that in case I am sick you can go and get the money for me." The instrument signed by Schneider and Ralston on May 10, 1953, when the account was opened, is set forth in full in 6 Ill2d at page 182 and indicated, among other things, that Schneider and Ralston, joint tenants, applied for a savings account and the issuance of evidence of membership in their joint names.

In its opinion the court stated that the deposit agreement tended to show a donative intent on the part of the original owner of the funds and that intention, so manifested, in the absence of contrary evidence, is sufficient to establish ownership in the survivorship by

virtue of the contract upon the death of the original owner; that the form of the agreement, however, is not conclusive as to the intention of the depositors between themselves and that the facts and circumstances surrounding the transaction, and the happenings pertaining to such transaction thereafter, may be inquired into for the purpose of aiding the court in ascertaining the intention of the parties. The court then held that the testimony of Ralston above set forth was sufficient to show that the actual ownership of the money in the accounts remained in Schneider and affirmed the judgment of the Appellate Court which affirmed the judgment of the Superior Court which found that the funds were the property of the Estate of Edward Schneider.

In re Estate of Wilson, 404 Ill 207, 88 NE2d 662 a petition was filed in the County Court of Kankakee County to require the widow of Dr. Ernest G. Wilson, who was the executrix of his will, to inventory as a part of his estate, the cash, United States bearer bonds, and United States E Bonds, all contained in safety deposit boxes in the First Trust and Savings Bank of Kankakee at the time of Dr. Wilson's death. The petition also sought to require the executrix to inventory $1837.52 which was in a joint tenancy checking account in the bank when Dr. Wilson died. It appeared that Dr. and Mrs. Wilson had rented the safety deposit boxes and both signed a printed lease card upon which was stamped: "as joint tenants with the right of survivorship and not as tenants in common." The signature card which they had signed with reference to the joint checking account authorized either to draw funds from that account and upon this card these words were stamped: "As joint tenants with the right of survivorship and not as tenants in common." The trial court held that Mrs. Wilson owned the property

individually by reason of being the survivor of a joint tenancy in the contents of the safety deposit boxes and also of the bank account.

Upon appeal this court held that Mrs. Wilson was not entitled to the contents of the safety deposit boxes but that the money in the checking account was properly held to be hers as the survivor of a joint tenancy. The Supreme Court affirmed the judgment of this court and held that no joint estate to the property in the safety deposit boxes was created by the rental contract with the bank and that the currency and bearer bonds in the boxes should have been inventoried by the executrix as assets of Dr. Wilson's estate. The court further held that the contract initiating the joint tenancy deposit account was signed by both Dr. and Mrs. Wilson and was in compliance with the requirement of the Statute. (Ill Rev Stats 1947, c 76, par 2.)

Dudley v. Uptown Nat. Bank of Moline, 25 Ill App 2d 514, 167 NE2d 257 was a citation proceeding in the Probate Court of Rock Island County instituted by Brendon Dudley, guardian of Pamela Lynn Dudley, a minor, seeking to obtain the proceeds of a $10,000 certificate of deposit bearing 3% interest issued by the Uptown National Bank "payable to Cecle C. Voss, 4540–13th Avenue, Rock Island, Illinois, P. O. D. (payable on death to) Miss Pamela L. Dudley." In the probate court and in the circuit court, upon appeal, judgment was entered in favor of the guardian, and the defendants appealed to this court.

It appeared that Cecle C. Voss was the wife of Andrew Voss who was a defendant together with the bank and its president, Sherman S. Ely, Pamela L. Dudley was a niece of Cecle C. Voss of whom Mrs. Voss was very fond and for whom Mrs. Voss had, on July 11, 1957 established a $60,000 trust fund. On the same day she established this trust she purchased the cer-

tificate of deposit, the proceeds of which are in controversy in this proceeding. The certificate was due in one year and bore 3% interest, payable, each six months upon the surrender of the certificate. Mrs. Voss received the certificate from the bank and retained it in her possession until December, 1957, at which time she told Brendon Dudley, the guardian and mother of Pamela L. Dudley, that she had purchased this certificate for Pamela and asked her to ascertain the meaning of the words "P. O. D." Mrs. Dudley did so and at Mr. Voss' request the certificate was taken to the bank by Mrs. Dudley for the purpose of having the words "payable on death to" following the letters "P. O. D." written out in full in the certificate. This was done and the certificate returned to Mrs. Voss, who in May, 1958 gave a bundle described as "important family things, family papers", to Mrs. Dudley with instructions to keep them. The certificate of deposit was in this bundle. On July 3, 1958 at the request of Mrs. Voss who was then ill and in a hospital and unable to endorse the certificate, Mr. Voss endorsed it, took it to the bank and surrendered it to the bank and the proceeds were credited to the joint account of Mr. and Mrs. Voss. On July 21, 1958 Cecle Voss died and this litigation ensued.

This court reversed the judgment of the circuit court and held there was no valid inter vivos gift by Cecle Voss to Pamela L. Dudley and that plaintiff's claim that the contract between the bank and Cecle Voss should be sustained, as a third party beneficiary contract, was without merit. During the course of the court's opinion it was said: "A gift is a voluntary, gratuitous transfer of property by one to another. To constitute a legally effective gift inter vivos there must be an intent by the claimed donor to make such a gift, an absolute and irrevocable delivery of the property to the claimed donee, with the intention of

389

presently vesting the title and immediate right of possession absolutely and irrevocably in the claimed donee, without restrictions, the claimed donor parting with all present and future dominion, power and control over the property and acceptance by the donee but if the delivery is absolute and unconditional, so that the claimed gift takes effect at once, the acceptance of the donee may be implied. The transaction must be fully consummated during the life of the claimed donor. Intention, alone, by the claimed donor to make such a gift is not enough to make an effective gift. Delivery, alone, without an intent to pass title and possession, is not enough. A delivery to a third person as the agent of the donor, not as an agent or trustee of the donee, is not a sufficient delivery. If the claimed gift is not fully consummated, completed and executed during the life of the claimed donor his decease revokes any part thereof, if any, which has been performed and necessarily terminates and makes impossible any subsequent consummation thereof. The law never presumes a gift. The burden of proving all facts required for a valid gift inter vivos is on the claimed donee. To sustain the claimed gift the proof must be clear, satisfactory, unequivocal, and convincing—there should be no uncertainty as to either the claimed intent or the claimed delivery. If a claimed gift does not take effect as an executed and completed transfer to the claimed donee during the life of the claimed donor it is an attempted testamentary disposition not valid unless made by a proper will."

In Lindner & Boyden Bank v. Wardrop, 370 Ill 310, 18 NE2d 897, the court had under consideration the ownership of a certificate of deposit which read: "William Wardrop or Bertha Nash has deposited in this bank $750 payable to the order of either of them on the return of this certificate properly endorsed, with interest at the rate of 2½% per annum." This certifi-

cate was purchased by Wardrop on July 12, 1935 and placed in his safety deposit box where it was found after his death, which occurred on November 23, 1935. Bertha Nash knew nothing about the certificate and contributed nothing toward the deposit. There was evidence that about a year before Wardrop died he stated to a neighbor that he had a paper in the bank which contained his own and Bertha Nash's names and that he wanted her to have a part of his money. The trial court rendered a decree in favor of the administrator and Bertha Nash appealed. In affirming the judgment of the Appellate Court, which affirmed the decree of the trial court, the Supreme Court said that the legal effect of the transaction was to put it in the power of Wardrop to draw the money out and protect the bank by his delivering the certificate properly endorsed, or to enable him to hand the certificate to Mrs. Nash to draw the money and protect the bank by delivering the certificate with her endorsement; that no title of any kind could pass to Bertha Nash unless she was given the power to get the money, which would not only require her endorsement but her possession of the certificate of deposit and this possession she did not have; that in a gift inter vivos there must be a change of possession of the subject of the gift so as to put it out of the power of the giver to repossess himself of the thing given and in case of a transfer, by gift, delivery of the money or the thing that represents the money, is necessary in order to effect a gift.

In Johnson v. Mueller, 346 Ill App 199, 104 NE2d 651, the court sustained a gift of certificates of deposit issued to "Jordan Johnson and/or Katie Miller" and payable to the order of either or the survivor. It appeared that the certificates were procured by Jordan Johnson who was the Uncle of Katie Miller and the evidence disclosed that she had rendered him many

391

services for which he was very appreciative. When he acquired the certificates he told the bank officials that he wanted his niece to get the money represented by the certificates. The court found that the several certificates had been delivered by Johnson to his niece during her lifetime and that the survivor was entitled thereto stating that there was clear and convincing proof of donative intent on the part of decedent.

■ We have considered the cases relied upon by appellants and others referred to herein. Each case depends upon its own facts and circumstances and what transpired between the parties pertaining to the transactions is always proper to be considered in order to ascertain the intent of the parties.

■ All of the cases stress the fact that for a gift to be a valid inter vivos gift it must appear that there was an absolute and irrevocable delivery of the property or the thing that represents the property by the claimed donor to the claimed donee with the intent to pass the present title thereto to the claimed donee; that the donor must part with all present and future control and dominion over the subject of the gift and that the claimed donee must have accepted the gift and it is only when delivery is absolute and unconditional that the acceptance thereof may be implied.

Counsel for appellants insist that the title to the shares of stock involved herein passed to appellants and their father as joint tenants at the time the father had the stock registered in their names upon the books of the several corporations; that the transfer on the books of the several corporations conferred legal title to appellants to the shares represented by the several certificates even though the daughters knew nothing of the gift. In support of this contention counsel cite Chicago Title & Trust Co. v. Ward, 332 Ill 126, 163 NE 319. In that case the administrator of the estate of Harriott Benton Ward filed a claim against the estate

of George C. Benton, deceased, for the conversion of 350 shares of stock of the Delta and Pine Land Company. It appeared that on November 12, 1895, George C. Benton purchased 350 shares of the capital stock of the Delta Company and at his direction the Company issued stock certificates representing the shares to his daughter Harriott Benton Ward. The certificates were never delivered to her but her father told her he had bought the stock for her. On April 18, 1896 Harriott Benton Ward died. Subsequently the signature of Harriott Benton Ward was either written by George C. Benton, or by someone under his direction, on the back of the certificates and by so doing purported to assign them to George C. Benton. The assignments were dated January 10, 1898. The Appellate Court held that the 350 shares of stock were given by George C. Benton to his daughters; that they belonged to her in her lifetime, and upon her death, to her estate and that her administrator was entitled to recover from the executor of the will of her father the value of the stock at the date of conversion with interest.

In affirming this judgment the Supreme Court stated that that court was committed to the doctrine that a transfer of shares on the books of the corporation passes the legal title to the person named in the stock certificate; that transfer on the books of a company, at the instance of the donor, was the best evidence of delivery of which the gift is susceptible and that no other rule is compatible with the principle of protection of the donee against retraction of a completed gift. The court then held that owners of shares of stock and those in privity with them cannot be deprived of the beneficial ownership by the means employed by George C. Benton and that it was too elementary to require discussion that the father could not revoke a gift in the manner he undertook if his

393

daughter had been living, and her death, two years before the transaction, rendered a revocation legally impossible.

What the court held in the Ward case was that legal title to the shares involved in that proceeding passed to the daughter at the time the father procured their registration upon the books of the company; that the certificates issued by the company were secondary evidence of title and the donative intent of the father was evidenced by their registration at his direction, on the books of the company in the name of his daughter.

In Luebke v. Browning, 18 Ill App2d 427, 152 NE2d 589, the court held that upon the basis of the evidence the issuance of certificates of stock by the Roger William Building Corporation at the direction of Harry J. Luebke to his children constituted a sufficient transfer of the ownership of the capital assets of the corporation to raise the presumption of a gift from the father to his children. In the course of its opinion, however, the court said (pp 438, 439) "The view that a completed gift of corporate stock may be made by a transfer of ownership on the books of the corporation, altho the donor retains possession or control of the certificate issued in the name of the donee, has not been unanimously adopted, See Mechem, Gifts of Corporation Shares, 20 Ill L Rev 9, 24–27 (1925); 99 ALR 1077, 1080–1084; 23 ALR2d 1171, 1186–1191. The case of Chicago Title and Trust Co. v. Ward, supra, has been recognized as a leading case advancing that principle. Because of it, Illinois has been considered one of the jurisdictions, recognizing a transfer of stock on the corporate books as the best evidence of a gift in the light of which the actual delivery of a stock certificate is only secondary evidence of title and therefore unnecessary to the completed gift. See In re Bush's Trust, 249 Minn 39, 81 NW2d 615, 622 (1957).

394

However, the Court of Appeals for the Seventh Circuit has held that the Uniform Stock Transfer Act (Ill Rev Stats 1957, c 32, par 416), requiring delivery of the certificate to effect a stock transfer, is 'utterly irreconcilable' with the doctrine of the Ward case. Shinsaku Nagano v. McGrath, 187 F2d 753. The court concluded in the McGrath opinion that the rule announced in the Ward case is no longer the law of Illinois, although it conceded the absence of any decision by an Illinois Court to this effect."

Following the report of the case of Lyons v. Freshman, a Montana case as reported in 23 ALR2d 1165 is an annotation on the necessity of delivery of a stock certificate in order to complete a valid gift of stock. This annotation supplements the one in 19 ALR 1080 and in 153 ALR 934. It is stated on pages 1188–1189 of the annotation found in 153 ALR that where the donor retains dominion and control over the stock, it has been held that transfer thereof on the corporate books, though coupled with the issuance of a new certificate in the donee's name, does not constitute the necessary delivery to effect a valid gift where the necessary donative intent is not shown, and cited, among other cases, Nolan v. American Tel. and Tel. Co., 326 Ill App 328, 61 NE2d 876 where it is said that when the evidence negatives a donative intent on the part of the donor, the transfer of the stock on the corporate books did not pass title. Shinsaku Nagano v. McGrath, 187 F2d 753 is among the cases cited, and this case holds that under the Uniform Stock Transfer Act, the transfer of stock on the corporate books and the issuance of a new certificate in the donee's name does not constitute a completed gift.

■ As to the stock in the several corporations as well as to the other assets in controversy here the record negatives a donative intent upon the part of decedent to make any present gift to his daughters.

From 1944, when Herman E. Wubbena opened the first joint savings account in his name and the name of his daughters, in the State Bank of Freeport until the time of his death on August 31, 1957, the decedent treated all the property in controversy here as his individual property. He collected the dividends on the stock of the several companies, made and renewed the several notes and collected the principal and interest and dealt with them as his own. He never parted with all present and future dominion and control over the property and he did not make any absolute and irrevocable delivery of any of this personal property to appellants with the intent of presently vesting title in them and there was never any acceptance of any of the property by either donee.

Decedent did want his daughters to have the property involved in this proceeding but he made no present gift to them during his lifetime. What he wanted was for them to have this property, to the exclusion of his wife, upon his death.

A valid inter vivos gift of the property in controversy here was never made by decedent and the chancellor did not err in so holding.

Decree affirmed.

McNEAL and SMITH, JJ., concur.