**In the Matter of the Estate of Peter K. Black-
ford, Deceased.**

**Gen. No. 62–F–16.**

Fourth District.
May 22, 1962.
Rehearing denied June 17, 1962.

Conger & Elliott, of Carmi, for appellant.

Bruce Saxe, of Albion, and Willard C. Pearce, of Fairfield, for appellee.

HOFFMAN, PRESIDING JUSTICE.

This case is an appeal from an order of the Circuit Court of White County dismissing a citation proceeding brought against Bertha Blackford, widow of Peter K. Blackford, deceased. The County Court, in the original hearing, held for the petitioner, but on appeal, the Circuit Court, after a trial de novo, decided in favor of the widow.

The citation petition had been filed in the Estate of Peter K. Blackford, deceased, by Eugene Blackford, a son by decedent's first wife. The charge made in the petition against the widow, the second wife of the decedent, was based upon fraud, breach of a fiduciary relationship, and that the application of the doctrine of election prohibits a decision in the widow's favor.

Bertha Blackford and Peter K. Blackford were married in 1916. Five children were born of the marriage. Mr. Blackford had had 2 children by his first wife, one of whom was Eugene Blackford, the petitioner.

Peter K. Blackford died of intestinal cancer on June 12, 1956 at the age of 83 years after an 8 week confinement in the hospital. At that time his wife, Bertha, was 66 years of age.

During his lifetime, Mr. Blackford was engaged in farming and raised Angus cattle. During the entire marriage most of his business affairs were handled or participated in by his wife, Bertha. When he was not able, she "did the biggest part of the banking," signing his name to checks, endorsing his name to checks made payable to him, and making deposits to their account in the bank.

There was nothing in the record to indicate that these two people had anything but a long, harmonious life together. He was the apparent boss around the farm and was the one who decided what was to be done. He was proud of the results of his farm efforts. He used his wife's help. She paid the bills, carried out his orders, made out checks and signed his name to them. He placed his trust in her.

There was no evidence that any friction existed between these two married people. Their story was the common one of a husband and wife working together for a full lifetime, working out the problems of a common struggle in raising a sizeable family. Each contributed much and each shared in the burdens. By their joint efforts, they reaped the fruits of their toil.

On March 26, 1952, they established a joint bank account in a bank in Carmi, Illinois. Up to that time, they had an account in another bank, but it was in Mr. Blackford's name only. Before making the joint account, the wife and husband together with a son sat in the kitchen of the home and read the signature card

150

out loud several times. Deposits of various sums were made to the account from then on. Most of the checks written against the account were signed by Mrs. Blackford, using her husband's name for a signature. She also endorsed his name to checks payable to his order and deposited them in the account.

They kept their personal papers in a safety deposit box which contained government bonds issued in their joint names. The money for the bonds came from the farm income. In addition, it appears that on two occasions real estate was put in joint tenancy; one, a piece they thought their son wanted and which they were going to finance; and the other, a piece they bought from the School Board. The other real estate was in his name alone; some of it, at least, being in his name even before they were married.

On May 21, 1956, three weeks before her husband's death, Bertha Blackford called and arranged for an attorney to visit her husband and prepare a will for him. The next day, she commenced a series of three events which gave rise to the citation proceedings being brought against her.

First, on May 22, 1956, she made a check for $9,-565.58 on the joint account, signed the check "Peter K. Blackford" and deposited this in her own name in a new account opened by her that day in the same bank. Secondly, on the same day, she endorsed her husband's name on three checks, payable to him personally, totaling $1,556.10, being receipts for oil royalty from his land and for the sale of a bull, kept $6.10 in cash and deposited the remaining $1,550 in her own individual account. Thirdly, some 9 days later, she endorsed her husband's name on two checks, payable to him personally, totaling $1,728.33, kept $28.33 and deposited $1,700 in their joint account. She then withdrew from the joint account, by check over the name, "Peter K. Blackford," the sum of $1,200 and deposited this in her own personal account. When Peter K.

151

Blackford died there was $96.73 remaining in the joint account.

The will executed by the deceased on May 22, 1956 was of some length, containing 12 articles in all. The personal effects were left to his wife, Bertha. She also was to have the use of his real estate. This was followed by provisions for his children and a grandson. In Article VII he gave his money and bank deposits, after expenses and debts, one-third to his wife and a $\frac{2}{21}$st share to each of his 7 children. There then followed a statement which said that he had no bank deposits "at the time" of his death in which his wife Bertha E. Blackford had any right of survivorship, and if any deposits were made in such an account "designating her with a right of survivorship," they were done "without my consent and against my Will." The Clause further stated that it wasn't his intent to create any right of survivorship. This clause of the will and a like statement in a letter of the same date, directed to "any" bank was the only evidence of any apparent dissatisfaction he may have had with the joint account. This will clause and letter were made while he was in the hospital, dying of cancer, and less than 3 weeks before his death.

Why this husband, after many years of apparent good relationship with his wife made the statement in his will and in a letter that his wife was to have no survivorship in the joint account is not explained by the evidence. Why the wife transferred these deposits to her own personal account is likewise not explained by any evidence.

Petitioner contends that the widow committed a fraud; that she converted funds to her own private use; and, that she breached the fiduciary relationship existing between her and her husband. It is his request that she be compelled to turn over the money to the executor to be disposed of in accordance with the terms of decedent's will.

The Circuit Judge, in an informal opinion, stated as follows:

> "I find no fiduciary relationship existing in this matter other than the normal trust and confidence existing in any marriage relationship of long duration where the parties are blessed with many children and are engaged in the normal struggle to provide a livelihood for their family. Since in the opinion of the Court no fiduciary relationship existed, the money was obtained by Mrs. Blackford, not by breach of a fiduciary or confidential relationship, but by reason of the fact that she was a joint owner of the bank account involved. With this in mind we must look to the cases involving joint bank accounts for the law applicable to the instant situation."

After this statement he concluded that the "judgment of the County Court should be reversed."

We do not agree with the reasoning behind the judge's decision. Insofar as the withdrawals of $9565.58 and $1200 were concerned, the law is clear in Illinois that "The fact that a husband and wife had a joint bank account against which either might draw, is no warrant for either to withdraw all the funds and apply them to his or her exclusive use." Swofford v. Swofford, 327 Ill App 55, 58, 63 NE2d 615, 617. See also Gercke v. Gercke, 331 Ill 413, 419, 163 NE 323; Scanlon v. Scanlon, 6 Ill2d 224, 233, 127 NE2d 435, 440.

And no citation of authority should be necessary to find that the appropriation by the wife, directly to her own account, of the checks totaling $1556.10, made out to her husband individually, was clearly a wrongful conversion of the amounts involved.

In accordance with the authorities above cited, the wrongful withdrawals from the joint account must be returned, and, for the purposes of this case

153

should be considered as returned to their original repository, the joint account, as of the date they were withdrawn. And, in view of the business procedure used by these people, the misappropriated checks totaling $1556.10, should be considered as being a part of this joint account, as of the date of their misappropriation, for there is no evidence whatsoever that they would have been deposited elsewhere. In other words, this case should be considered by the court as though the monies above referred to were a part of the joint account on the date of the death of Peter K. Blackford.

So, the proper disposition of this case should depend upon whether or not the wife, upon the husband's death, in view of all the facts which may be adduced, is entitled, as a survivor, to the balance of the account. See In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445. It is not clear from this record that the court below went fully into this matter. The court found that there was no basis in petitioner's points pertaining to fraud and a violation of a fiduciary relationship. This conclusion is supported by the evidence and it need not be reopened. But we believe that a more full and complete hearing pertaining to the facts and law applicable to the question involving the disposition of the balance of the joint account on the death of the husband is in order.

Accordingly we vacate and set aside the order appealed from and remand this cause to the Circuit Court of White County for further proceedings consistent with the views herein expressed.

Order set aside and cause remanded with directions.

SCHEINEMAN and CULBERTSON, JJ., concur.