*In re* ESTATE OF NATHAN M. CHANDLER, Deceased.—(BROOXIE CHANDLER, Adm'r of the Estate of Nathan M. Chandler, Deceased, Petitioner-Appellee, *v.* GORDON CHANDLER, Respondent-Appellant.)

Second District    No. 79-732

Opinion filed November 26, 1980.

Rolland J. McFarland, of Rockford, for appellant.

Richard W. Berry, of Berry, Berry & Heckinger, of Rockford, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from an order distributing the funds of a savings account and a trust account. Petitioner, Brooxie Chandler, as administrator of the estate of Nathan M. Chandler and individually as surviving spouse, filed a citation to recover funds from the two accounts which allegedly were in the possession of respondent, Gordon Chandler, decedent's brother. The trial court ruled in favor of petitioner's view of the manner of distribution of the funds, and respondent appeals.

Nathan and Brooxie Chandler were married in 1946 and remained married until Nathan died on June 5, 1978. Both parties were employed during most of this 32-year period, and both contributed to the accumulation of various assets. On July 8, 1966, a joint savings account with the right of survivorship was established by the Chandlers at the Loves Park Savings and Loan Association. The account grew from an original deposit

of $448.07 in 1966 to $16,441.31 by January 6, 1978. Although there is no evidence of the precise contribution made by each party, the record indicates that deposits consisted primarily of income from jointly owned rental property.

On March 12, 1976, Nathan Chandler opened a one-year certificate of deposit at the Loves Park Savings and Loan Association in the amount of $15,000 with Nathan Chandler listed as trustee for Brooxie Chandler. The certificate of deposit was deposited as the *res* in a revocable trust account and was payable on death to the named beneficiary. A separate instrument was executed which set forth provisions regarding the deposit and disposition of funds and the change, alteration, modification and termination of the trust (hereafter trust account).

Brooxie Chandler left the marital residence on December 18, 1977, and filed a petition for dissolution of marriage on February 9, 1978. On January 11, 1978, Nathan withdrew $16,000 from the joint savings account and deposited it in a new account held jointly with respondent (hereinafter called new joint savings account). Nathan also changed the beneficiary on the trust account by crossing out the name of his wife and substituting the name of respondent one day prior to being served with an injunction preventing the transfer or dissipation of marital assets. Nathan Chandler died on June 5, 1978, before final judgment had been entered in the dissolution proceedings.

Brooxie Chandler was appointed administrator of her husband's estate on January 12, 1979. A citation was filed by the administrator on April 19 to recover from respondent the funds transferred from both the joint savings account and trust accounts. The trial court entered an order awarding petitioner individually half of the funds from each account as marital property under the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503) and ordered the balance of the new joint savings account to be distributed as an estate asset. The court further ordered that respondent hold the remaining half of the trust account subject to a pro rata cost of administration, surviving spouse's award and the one-third statutory share of the surviving spouse. This appeal followed.

Respondent first contends that it was error to award petitioner half of the funds in each account as "marital property" under section 503 of the Marriage and Dissolution of Marriage Act when a judgment of dissolution was never entered. We agree.

■■■ The dissipation of marital assets by one spouse in contemplation of divorce has never been and is not now an acceptable practice in Illinois. (See *Gercke v. Gercke* (1928), 331 Ill. 413, 163 N.E. 323.) Section 503(c)(1) of the new Marriage and Dissolution of Marriage Act specifically allows the court to compensate the disadvantaged spouse by con-

sidering such conduct in the division of property. (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517 (withdrawal from joint savings account).) Judicial authority to distribute property under the new Act, however, is expressly confined to those proceedings which culminate in a declaration of invalidity or a judgment of dissolution. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) The settlement of property disputes is only a function of the court's broader power to terminate the legal relationship which exists between spouses and thus does not come into play unless and until a marriage has been dissolved. *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; *In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804.

■■ It has long been the rule in Illinois that the death of either party to a divorce action prior to final judgment deprives the circuit court of jurisdiction over all aspects of the marriage relationship. (*Bushnell v. Cooper* (1919), 289 Ill. 260, 124 N.E. 521; *Howard v. Howard* (1977), 49 Ill. App. 3d 441, 364 N.E.2d 464.) We therefore conclude that the application of section 503(c) was erroneous since Nathan Chandler died before a judgment of dissolution was entered. Whether the award to petitioner of funds from either account can be sustained on other grounds depends upon a separate examination of the two transactions.

## NEW JOINT SAVINGS ACCOUNT

■■ Nathan Chandler withdrew $16,000 from a savings account held jointly with his wife, leaving a balance of $448 and deposited it in an account held jointly with his brother, the respondent. It is respondent's position on this appeal that he is entitled to the $16,000 because it constitutes a valid inter vivos gift within the meaning of *Johnson v. LaGrange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185. *Johnson* held that the deposit of funds by one spouse in an account held jointly with another person represents a complete and effective transfer of property even though it is done for the purpose of defeating the marital rights of the surviving spouse. Reliance on *Johnson* in this case is misplaced, however, because that decision recognizes only the right to dispose of individually owned as opposed to jointly owned property. (*Johnson*, at 357.) The question here, not decided in *Johnson*, is whether one spouse can withdraw and dispose of funds from a *joint* account without liability to the other spouse.

■■ The relationship between parties to a joint savings account is governed by the agreement entered into with the financial institution and not by the common law principles of joint tenancy. (*In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 445.) The typical agreement, and the one signed by the Chandlers in this case, authorizes either party to withdraw all or part of the deposit and entitles the surviving tenant to the balance

remaining upon the death of the deceased tenant. Prior to 1955, the lifetime and survivorship rights implicit in these terms were binding on both depositors, and extrinsic or parol evidence was inadmissible to show a contrary understanding. (*In re Estate of Cook* (1935), 282 Ill. App. 412 (one joint tenant is not entitled to a division of the funds withdrawn by the other joint tenant where the written agreement authorized withdrawal of the entire deposit by either party); *In re Estate of McIlarth* (1934), 276 Ill. App. 408 (evidence that the deceased did not intend to give the balance of the account to the surviving tenant is inadmissible when it contradicts the express terms of the deposit agreement).) In *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 445, however, the supreme court held that a written deposit agreement in statutory form raises only a presumption of donative intent and that this presumption may be overcome by evidence that the parties intended an arrangement different from that reflected in the agreement. See *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470.

*Schneider* and subsequent cases involve attempts to rebut the presumption of a gift to the survivor, usually under circumstances in which the deceased tenant provided most, if not all, of the funds deposited. (*Murgic v. Granite City Trust & Savings Bank; Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850; *In re Estate of Schroeder* (1979), 74 Ill. App. 3d 690, 393 N.E.2d 1128; *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 388 N.E.2d 431; Annot., 43 A.L.R. 3d 971 (1972).) In several instances, however, courts have considered challenges to the right of each tenant to appropriate or deal with the account during their lifetimes. *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435; *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 403 N.E.2d 831; *In re Estate of Taggart* (1973), 15 Ill. App. 3d 1079, 305 N.E.2d 301; *Koziol v. Harris* (1967), 82 Ill. App. 2d 472, 226 N.E.2d 387; *Graves v. Graves* (1963), 42 Ill. App. 2d 438, 192 N.E.2d 616; *In re Estate of Blackford* (1962), 36 Ill. App. 2d 148, 183 N.E.2d 53; Annot., 161 A.L.R. 71, 75 (1946).

■■ In *Scanlon*, for example, a husband was found entitled to half of the funds withdrawn by his wife from a joint savings account even though the signature card provided that the entire deposit could be withdrawn by either party. The court held that the presumption of donative intent raised by the agreement was overcome by evidence that both spouses contributed to the account and conducted their affairs with a view toward sharing equally all property acquired during the marriage. (*Scanlon*, at 233.) Like *Scanlon*, the evidence here is sufficient to show that both parties intended to share equally in the ownership of the funds on deposit notwithstanding contrary language in the agreement. The record shows that both parties worked for most of their 32-year marriage

and that both contributed to the account and to the accumulation of various income producing assets. It is both reasonable and equitable under these circumstances to infer that property acquired during the marriage was intended by the parties to be shared equally. On the basis of *Scanlon*, therefore, we hold that the trial judge properly awarded petitioner individually one-half of the funds withdrawn from the joint savings account. The remaining half of the account, however, belonged to Nathan and was his to dispose of as he saw fit. The deposit of said undivided one half of those funds during his lifetime in an account held jointly with respondent constitutes a valid inter vivos gift to which respondent is entitled as the surviving joint tenant. *Johnson*, at 368.

## TRUST ACCOUNT

In addition to withdrawing funds from the joint savings account, Nathan Chandler changed the beneficiary on a trust account by crossing out the name of his wife and substituting the name of respondent. The trial court held that this transfer was illusory under *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, and ordered one half to the wife as marital property and the remainder to be held by respondent subject to a pro rata cost of administration, surviving spouse's award and one-third statutory share. Respondent argues that *Montgomery* is factually inapplicable and that section 1 of "An Act to provide for the validity of a lifetime transfer of property with retained powers or rights." (Ill. Rev. Stat. 1979, ch. 110½, par. 701) has effectively overruled *Montgomery* by specifically validating savings account trusts.

The supreme court in *Montgomery* held that a savings account trust over which the settlor retains complete ownership and control was illusory and could not be used to deprive the surviving spouse of his or her statutory share in the trust assets. *Johnson v. LaGrange State Bank* makes clear, however, that the rule in *Montgomery* is confined to Totten Trusts and that otherwise the owner of property has an absolute right to dispose of such assets during his lifetime even though the transfer is for the purpose of defeating the marital rights of the surviving spouse. *Johnson*, at 356-61.

▮▮▮ The "Totten" or "tentative" trust referred to in *Montgomery* is by definition a savings account opened in the name of a depositor as trustee for another with no formal terms, provisions or statement of intention. (*In re Estate of Anderson* (1966), 69 Ill. App. 2d 352, 217 N.E.2d 444.) The account in the present case by contrast was accompanied by a document entitled "Discretionary Revocable Trust Agreement," which contained definite provisions regarding the deposit and disposition of funds and the change, alteration, modification and termination of the trust. Savings

accounts established by the execution of trust declarations virtually identical to those here have been held to constitute express inter vivos trusts and not Totten or tentative trusts. (*In re Estate of Anderson*, at 363.) We therefore agree with respondent that *Montgomery* is inapplicable.

■■ The only restriction on the *inter vivos* transfer of property owned by one spouse in circumstances outside the scope of *Montgomery* is that the owner actually intend to convey a present interest in the transferred property. (*Johnson*, at 361.) The record in this case shows that Mr. Chandler was in poor health when he changed the beneficiary and that he resided with respondent until his death. Mr. Chandler made no withdrawals from the principal or otherwise exercised his reserved powers to deplete the trust assets. These facts indicate that he intended to make a valid and effective transfer at the time the declaration of trust was executed and we therefore hold that the trial judge erred in awarding petitioner any of the funds on deposit in the trust account at the time of Mr. Chandler's death.

In light of our decision we need not consider the applicability of section 1 of "An Act to provide for the validity of a lifetime transfer of property with retained powers or rights" (Ill. Rev. Stat. 1979, ch. 110½, par. 701).

For these reasons the judgment of the circuit court of Winnebago County awarding petitioner, individually, half of the funds withdrawn from the joint savings account is affirmed; the order is in all other respects reversed and the case is remanded for entry of an order distributing the accounts herein involved in a manner consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

SEIDENFELD, P. J., and LINDBERG, J., concur.